**Gail C. HASS and Michael Hass,
Plaintiffs-Appellees,**

v.

**DARIGOLD DAIRY PRODUCTS CO.,
and Teamsters Union, Local 66,
Defendants-Appellants.**

No. 83–4231.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 2, 1984.

Decided Jan. 15, 1985.

Robert Stevenson, Seattle, Wash., for plaintiffs-appellees.

Herman L. Wacker, Davies, Roberts, Reid, Anderson & Wacker, Seattle, Wash., for defendants-appellants.

Before FERGUSON and NELSON, Circuit Judges, and JAMESON,* District Judge.

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

NELSON, Circuit Judge:

Darigold Dairy Products Company ("Darigold") and Teamsters Union, Local 66 (the "Union") appeal from a judgment reinstating the original date-of-hire seniority of Gail Hass, an employee of Darigold and member of the Union, in accordance with the collective bargaining agreement between the Union and Darigold. After receiving assurances from Union representatives that she would not lose seniority if she transferred from full-time to part-time status, Mrs. Hass made such a change for health reasons. When she later returned to full-time status, she discovered that she had been stripped of her original seniority position. The Union refused to process Mrs. Hass' grievance. We affirm the district court's reinstatement of seniority.

## FACTUAL AND PROCEDURAL BACKGROUND

Local 66 represents Darigold employees, including appellee Gail Hass, and in that capacity has been party to collective bargaining agreements with Darigold, a Washington corporation. Appellee began working for Darigold, as a full-time employee, in November 1968. In early 1979, however, she investigated the possibility of switching to part-time status within her department, for health reasons (high blood pressure). Concerned that she might thereby forfeit her date-of-hire seniority standing, Mrs. Hass spoke to the chief executive officer of the Union local, its Secretary-Treasurer, who advised her that she would not lose her seniority if she switched to part-time.

Appellee began working part-time on July 1, 1979. In May, 1981, however, Mrs. Hass transferred back to full-time status. Upon hearing rumors that she had lost her seniority, and had been placed at the bottom of the full-time seniority list, appellee wrote a letter in June 1981 expressing her concern to Darigold's Personnel Director.

This letter was never answered. In September, Mrs. Hass received further assurances from the Union's Secretary-Treasurer that she had not lost her seniority. Yet in October, appellee was informed by her supervisor at Darigold that she had in fact lost her original date-of-hire seniority, whereupon she filed a grievance with the Union. The Union refused to process the grievance, maintaining that it did not agree with appellee that under the collective bargaining agreement she was entitled to retain her original seniority date.

Mrs. Hass filed a complaint in the Superior Court of the State of Washington in January 1982. The case was removed by the Union, pursuant to 28 U.S.C. § 1441, to the United States District Court, which had jurisdiction of the action under 29 U.S.C. § 185(a) and 28 U.S.C. § 1331.

On August 24, 1983, less than three weeks before the commencement of trial, the Union and Darigold entered into a "Letter of Understanding" (the "Letter") which supplemented the seniority provisions of the collective bargaining agreement then in force. The amendment, in its general outline, had been endorsed overwhelmingly by the bargaining unit employees at a Union meeting held earlier that month. A central provision of the Letter was as follows (emphasis in original):

> 2. Separate seniority lists shall be established for full-time and part-time employees. "Seniority" for purposes of layoff and recall, and for other purposes provided herein shall be established based on the date upon which each employee *last assumed* their full-time (or part-time) status...

On September 12, 1983, the matter was brought to trial, after which the district court ordered that appellee's seniority be reinstated as of her original date of hire, November 8, 1968. This appeal followed. Our jurisdiction derives from 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Did the Letter of Understanding between the Union and Darigold render plaintiff-appellee's action moot?

2. If not, did the district court clearly err in finding, in the course of its interpretation of the bargaining agreement and Mrs. Hass' rights thereunder, that there was no past practice or custom at Darigold with respect to the seniority question posed by appellee's situation?

## DISCUSSION

### I. MOOTNESS

Appellants contend that the Letter of Understanding, which amended the collective bargaining agreement shortly before trial, rendered Mrs. Hass' claim moot. They argue that even if under the pre-Letter bargaining agreement Mrs. Hass was entitled to reinstatement of her original date-of-hire seniority, and even if the Letter represented an entirely new treatment of seniority not supported by prior custom or practice, the Letter properly and lawfully modified the pertinent seniority provisions such that Mrs. Hass, like all the office employees in the bargaining unit, became subject to the new seniority rules. These new rules, appellants insist, precluded the district court from lawfully reinstating Mrs. Hass' original seniority position.

This argument is without merit. Appellants, by virtue of their representations to Mrs. Hass that she would not lose seniority, were estopped from instituting such a change in seniority rules with respect to Mrs. Hass and those changes in her employment status which are under scrutiny in this case.

### A. *Standard of Review*

■ The meaning of the Letter of Understanding is not in dispute. The only question concerns the legal effect of the Letter upon the parties and upon their litigation, and because this is purely a question of law, it is reviewable *de novo* on appeal. *See United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B. *Analysis*

"A case is moot when the issues presented are no longer 'live' or the parties lack a

legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969), *quoted in Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974)). We must decide whether the Letter validly modified the seniority rules pertaining to Mrs. Hass' changes from full-time to part-time and back again such that her action for seniority reinstatement under the collective bargaining agreement became moot.

■ It is quite well established in this Circuit that seniority rights are creations of the collective bargaining agreement, and so may be revised or abrogated by later negotiated changes in this agreement. Employee seniority rights are not "vested" property rights which lie beyond the reach of subsequent union-employer negotiations conducted in the course of their evolving bargaining relationship. *See ILWU v. Kuntz*, 334 F.2d 165, 171 (9th Cir.1964); *Hardcastle v. Western Greyhound Lines*, 303 F.2d 182 (9th Cir.) (relying upon *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)), *cert. denied*, 371 U.S. 920, 83 S.Ct. 288, 9 L.Ed.2d 229 (1962); *see also Green v. Los Angeles Stereotypers Union No. 58*, 356 F.2d 473, 475 (9th Cir.1966). *Accord, e.g., Cooper v. General Motors Corp.*, 651 F.2d 249 (5th Cir.1981); *Local 1251 UAW v. Robertshaw Controls Co.*, 405 F.2d 29 (2nd Cir.1968) (en banc); *Charland v. Norge Division, Borg-Warner Corp.*, 407 F.2d 1062 (6th Cir.), *cert. denied*, 395 U.S. 927, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969). A union thus may renegotiate seniority provisions of a collective bargaining agreement, even though the resulting changes are essentially retroactive or affect different employees unequally. *See Kuntz*, 334 F.2d at 171; *Hardcastle*, 303 F.2d at 184–85, 187; *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

■ Nevertheless, such bargaining discretion is not without limit. For one thing, a union, as representative of all of its members, has a duty of fair representation to each, which obligates it to "make an honest effort to serve the interests of all of those members, without hostility to any." *Id.* at 337, 73 S.Ct. at 685. Differences are to be tolerated in the manner and degree to which the terms of any negotiated agreement affect individual employees, as long as the bargaining representative acts with "complete good faith and honesty of purpose in the exercise of its discretion," *id.* at 338, 73 S.Ct. at 686, and its conduct toward any member of the bargaining unit is not "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

■ The equitable doctrine of estoppel provides another constraint on the freedom of bargaining representatives and employers. Estoppel principles are applicable in actions arising under federal law. *See, e.g., Heckler v. Community Health Services of Crawford County, Inc.*, ── U.S. ──, 104 S.Ct. 2218, 2223–27, 81 L.Ed.2d 42 (1984); *Jablon v. United States*, 657 F.2d 1064, 1067–70 (9th Cir.1981). In particular, "[t]he doctrine of estoppel is accepted in labor relations ... cases." *Terones v. Pacific States Steel Corp.*, 526 F.Supp. 1350, 1356 (N.D.Cal.1981); *see also, e.g., Bob's Big Boy Family Restaurants v. NLRB*, 625 F.2d 850, 853–54 (9th Cir.1980); *Amalgamated Clothing and Textile Workers Union v. Ratner Corp.*, 602 F.2d 1363, 1370 (9th Cir.1979).

We have distinguished between equitable estoppel and promissory estoppel. *Jablon*, 657 F.2d at 1068. Equitable estoppel has been defined as

[t]he doctrine by which a person may be precluded by his act or conduct ... from asserting a right which he otherwise would have had. [Citation.] The effect of voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifi-

ably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.

Black's Law Dictionary 483 (5th ed. 1979), *cited in part in Jablon*, 657 F.2d at 1068; the doctrine has also been described as standing for the principle that

> where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage.

*Amalgamated Clothing*, 602 F.2d at 1370 (quoting *Union Mutual Insurance Co. v. Wilkinson*, 80 U.S. (13 Wall.) 222, 233, 20 L.Ed. 617 (1872)).

The related doctrine of promissory estoppel has been defined as

> [t]hat which arises when there is a promise which promisor should reasonably expect to induce action or forbearance of a definite and substantial character on part of promisee, and which does induce such action or forbearance, and such promise is binding if injustice can be avoided only by enforcement of promise.

Black's Law Dictionary 1093 (5th ed. 1979), *quoted in Jablon*, 657 F.2d at 1068.

In the case now before us, Mrs. Hass might well find relief under either estoppel doctrine, especially in view of the fundamental idea that estoppel, whose "hallmark ... is its flexible application," exists "to avoid injustice in particular cases." *Crawford County*, — U.S. at —, 104 S.Ct. at 2223. We choose, however, to view Mrs. Hass' action from a promissory estoppel perspective, because she relied upon future guarantees by appellants and not upon misrepresentations or concealments of present fact.

For our promissory estoppel inquiry, we turn to the Restatement (Second) of Contracts § 90 (1979), which provides in relevant part:

> A promise which the promisor should reasonably expect to induce action or for-

bearance on the part of the promisee ... and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Id.; see Santoni v. FDIC*, 677 F.2d 174, 178 (1st Cir.1982); *Kizas v. Webster*, 492 F.Supp. 1135, 1145 (D.D.C.1980), *aff'd*, 707 F.2d 524 (D.C.Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

■ The present case provides an appropriate occasion for the application of promissory estoppel principles. Mrs. Hass' reliance upon the Union's assurances to which Darigold apparently acquiesced was not only reasonable, but also entirely foreseeable. The Union's promises were not vague, general, or of indeterminate application; they were specific and unqualified responses to Mrs. Hass' clearly expressed concerns over the particular changes of employment status which she was contemplating openly. Appellants did, or should have, foreseen Mrs. Hass' reliance upon their guarantees. They may not now renege and thereby unjustly exploit the vulnerable position of Mrs. Hass to which their promises enticed her. Both Darigold and the Union, therefore, are estopped from raising their subsequent agreement in order to defeat Mrs. Hass' claim to the original date-of-hire seniority which had been guaranteed to her.

Thus, the district court correctly chose to disregard the Letter of Understanding, thereby in essence enforcing the Union promise that nothing would be done to jeopardize Mrs. Hass' seniority position if she switched to part-time status. We find that the Letter modification of the bargaining agreement was not binding upon Mrs. Hass and did not render her action moot. We do not, however, go so far as to invalidate the modification more generally. Appellants are herein estopped from invoking the Letter only with respect to Mrs. Hass, and then only with respect to those employment status changes of hers which have formed the basis for this action. If Mrs. Hass undertakes another change to part-time status after the conclusion of this

litigation, she will not be shielded from the provisions of the Letter of Understanding, absent new Union or employer promises or representations.

## II. PAST PRACTICE

The district court construed the pre-Letter bargaining agreement and the relations to which it gave rise as requiring the reinstatement of Mrs. Hass' original seniority position. Its interpretation was based upon an examination of the text of the agreement, the absence of a relevant past practice or custom at Darigold, the fact that health reasons underlay appellee's change of status, and especially the assurances provided by the Union to appellee that she would not lose her seniority if she changed to part-time status. Appellants now contend that the district court erred in finding that no relevant past practice or custom existed at Darigold with respect to the seniority issue posed by appellee. We find appellants' argument unpersuasive.

### A. *Standard of Review*

■ We will upset an essentially factual determination made by a district court in the course of interpretation of a contract if and only if it is clearly erroneous. *Martin v. United States,* 649 F.2d 701, 703 (9th Cir.1981). "When the inquiry extends beyond the words of the contract and focuses on related facts, ... the trial court's ... interpretation of the contract will not be reversed unless it is clearly erroneous." *Societe Generale de Banque v. Touche Ross & Co. (In re U.S. Financial),* 729 F.2d 628, 632 (9th Cir.1984). This principle seems equally applicable to collective bargaining agreements. *See ILWU, Local 21 v. Reynolds Metal Co.,* 487 F.2d 696 (9th Cir.1973), *cert. denied,* 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974); *see also Laborers Clean-Up Contract Administration Trust Fund v. Uriarte Clean-Up Service, Inc.,* 736 F.2d 516, 520 n. 2, 521–22 (9th Cir.1984); *Calhoun v. Bernard,* 333 F.2d 739, 741 (9th Cir.1964).

### B. *Analysis*

It may be appropriate for gaps in a collective bargaining agreement "to be filled in by reference to the practices of the par-

ticular industry and of the various shops covered by the agreement." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 580, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Here, the district court sought such exegetical aid, but concluded that no past custom or practice existed with respect to the seniority issue posed by Mrs. Hass. This assessment finds strong support in the record.

Appellants point to only two prior instances in order to substantiate their contention that a custom existed. One of those cases concerned employees who had begun at Darigold as part-time workers before switching to full-time, and so did not raise the question now before us, whether a transfer from full-time to part-time (and back again) should result in a loss of seniority. The other instance discussed by appellants did involve a factual history similar to the case of Mrs. Hass, but was handled in an apparently *ad hoc* manner which reflects no consistent policy or custom whatsoever. Moreover, the relevance of that incident to Mrs. Hass' situation is undermined by a significant difference between then and now: entirely lacking in that prior case were the reassuring representations of the Union that no seniority would be lost.

■ We are thus left with only a single prior series of events which is plausibly analogous to that which confronted the parties in the instant matter, and one which was not handled in a principled fashion. Even appellee's supervisor at Darigold conceded that Mrs. Hass presented an unprecedented situation. The district court's conclusion that there was no past practice was not clearly erroneous. Consequently, we see nothing amiss in its construction of Mrs. Hass' rights under the pre-Letter of Understanding collective bargaining agreement.

## III. CONCLUSION

Mrs. Hass' action was not rendered moot by the Letter of Understanding entered into by the Union and Darigold shortly before trial. The promises made to Mrs. Hass that she would not lose seniority if she switched to part-time status estopped

appellants from modifying the seniority provisions of the collective bargaining agreement with respect to Mrs. Hass and the changes of employment status which she undertook in reliance on those promises.

Therefore, Mrs. Hass' seniority rights were grounded in the pre-Letter bargaining agreement. The district court interpreted this agreement, finding that no past practice or custom existed at Darigold with respect to the seniority situation faced by Mrs. Hass, and concluding that Mrs. Hass' original seniority should be reinstated. Because we find no clear error in the former determination, we uphold the latter as well. The judgment of the district court is

AFFIRMED.