Johnnie BONDS, et al.,
Plaintiffs-Appellants,

v.

The COCA–COLA COMPANY, et al.,
Defendants-Appellees.

No. 85–2597.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1986.

Decided Dec. 3, 1986.

Jacob N. Gross, Jacob N. Gross, Ltd., Abramson & Fox, Chicago, Ill., for plaintiffs-appellants.

Marvin Gittler, Asher Pavalon Gittler & Greenfield, Ltd., Lawrence L. Summers, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Johnnie Bonds and 36 other truck drivers were employed by Midwest Machinery Movers under an industry-wide collective bargaining agreement to which Midwest and Local 710 of the Teamsters were parties. Midwest provided transportation services for The Coca-Cola Company. In 1982 Coca-Cola moved some of its operations from Chicago to St. Paul, Minnesota. It terminated its contract with Midwest, which in turn laid off the drivers. The drivers, asserting that Midwest was an alter ego of Coca-Cola, invoked a provision of the collective bargaining agreement providing that employees may transfer to follow the work. Midwest denied the request, because *it* had not transferred any work to St. Paul, and Coca-Cola, which was not a party to the collective bargaining agreement, denied that it had obligations to the drivers.

The drivers asked their union to represent them in this dispute. Local 710 presented the drivers' claim to the Joint

**1326**

Area Council, an arbitral body including representatives of labor and management, on December 15, 1982. The drivers contend that Local 710's agent did not press their case before the Council, and that the labor representative on the Council voted with management to reject the claim. On July 28, 1983, more than seven months later, some of the drivers filed this hybrid contract and duty of fair representation action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against Local 710, Midwest, and Coca-Cola. After the completion of discovery and some preliminary skirmishing, the district court granted summary judgment for defendants. The court held that the suit is untimely under *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), which established that hybrid § 301 actions must be filed within six months after the claim accrues.

■ The drivers argue that *DelCostello* does not apply to this case because it was decided on June 8, 1983, only seven days before the date that the district court held was the last on which the drivers could have filed and therefore "was not in the public domain within the period of limitation held by the court below." We take this to be an argument that *DelCostello* is not retroactive. It is an argument we have rejected in several cases, none acknowledged by the drivers. E.g., *Landahl v. PPG Industries, Inc.*, 746 F.2d 1312 (7th Cir.1984), pointing out that until *DelCostello* this court had applied an even shorter period of limitations.

The drivers' principal argument is that the claim did not accrue until mid-February 1983. It is undisputed for current purposes that, shortly after the Council's decision, the business agent of Local 710 told some of the drivers that the union would commence litigation to challenge the Council's decision, and that on January 20, 1983, the union's lawyer told three of the drivers that such litigation had no prospect of success, implying that none would be pursued. The drivers claim—and this is hotly disputed—that the others did not learn until

mid-February that the union would not sue, because until then Local 710's business agent continued to represent that the union would act. The drivers contend both that the failure to sue was a breach of the duty of fair representation and that until they learned of the decision not to sue they did not know that the union had been against them all along. (They also contend that the union's negotiation of an agreement with Midwest rather than Coca-Cola violated the duty of fair representation.) Because the failure to sue was a breach of duty by the drivers' lights, they insist that the claim did not "accrue" until mid-February.

■ The district judge relied on *Freeman v. Teamsters*, 746 F.2d 1316 (7th Cir. 1984), for the proposition that the claim accrued the date the Council decided against the drivers. We held in *Freeman* that the failure to contest an arbitration award in court cannot be a breach of the duty of fair representation. Arbitral awards are binding, and courts sustain them except in the most extraordinary circumstances. We discourage efforts to upset these awards. E.g., *Dreis & Krump Mfg. Co. v. Machinists*, 802 F.2d 247 (7th Cir.1986). A union is never obliged to contest an award in court in order to discharge its duty of fair representation, and a suit is likely to be met with an award of attorneys' fees to the other side, as it was in *Dreis & Krump*. We therefore held in *Freeman* that the date of the arbitrator's decision is the critical one for purposes of *DelCostello*, because on that date the employees know *or could discover* that they have a potential claim against their union. See *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). The drivers do not discuss *Freeman* in either their opening or their reply brief. It is dispositive against them. See also the decision on remand from the Supreme Court in *DelCostello v. Teamsters*, 588 F.Supp. 902 (D.Md.1984), *affirmed*, 762 F.2d 1219 (4th Cir.1985), re-

jecting an argument almost identical to the one presented by the drivers.

There might have been room for an argument based on equitable tolling. The drivers might have argued that although the claim accrued in December 1982, it was tolled by the union's promise to sue, and perhaps such an argument is implied by their position. The tolling lasted until February 1983, the argument might proceed, because not until February were all of the plaintiffs told that the union was on management's side.

This is a problematic line of argument. *DelCostello* emphasized the importance of expeditious resolution of hybrid claims under § 301. *Freeman* establishes a readily ascertainable time when the claim accrues, if the union has taken it to arbitration. A rule that contemplation of suit tolls the time is equivalent to the rule rejected in *Freeman*—that the claim does not accrue until the union has decided not to file a suit. Many unions will discuss litigation; discussion may or may not be taken as a promise to sue; to use open discussion to enlarge the time for suit is to extend from six to nine months the effective period of limitations. (The union would have had 90 days to file a suit, see *Dreis & Krump*, 802 F.2d at 249–251.) In the process all certainty would be lost, as this case demonstrates. Now more than three years old, the case has been sidetracked from the substantive question whether the union violated its duty to the procedural question whether the drivers learned in January rather than in February that the union would not file a suit. Rules of law should promote ready ascertainment of rights and responsibilities. A rule fixing the time on the date of the arbitrator's decision does this. Employees could discover their claim in the exercise of diligence, even if they are ignorant in fact. They will have at least three months to file the hybrid § 301 suit after the expiration of the 90 days the union had to file a suit challenging the arbitral award, which suggests that expansive tolling doctrines are unnecessary.

Tolling is possible in principle; for example, the union might hide from its members the existence of the arbitrator's decision. Perhaps a message that the arbitrator's decision was not "final" but would be followed by another layer of administrative review should be treated similarly. Fraudulent concealment is an established ground of tolling, and there are others. *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946). Cf. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–98, 102 S.Ct. 1127, 1131–35, 71 L.Ed.2d 234 (1982); *Sentry Corp. v. Harris*, 802 F.2d 229, 236 (7th Cir.1986). But it is not a good idea to use tolling to undo rules of the sort established in *Freeman*. We have attempted to keep the rules for computing time in *DelCostello* cases as simple as possible. In *Frandsen v. Teamsters*, 782 F.2d 674 (7th Cir.1986), for example, we concluded that the pursuit of administrative remedies within the union tolls the time automatically, even if pursuit of the remedies could have been excused as futile. *Frandsen* pointed out that it is hard to tell whether remedies should have been used, *id.* at 682–84, so that a mechanical approach to the period of limitations is beneficial. The same considerations counsel simplicity in the choice of rules that interrupt the running of a period of limitations. See also *Galindo v. Stoody Co.*, 793 F.2d 1502, 1510 (9th Cir.1986).

Some of the facts in this case suggest a form of concealment of the significance of the Council's decision. The business agent may have told some of the drivers that the union did not do much to persuade the Council because its decision was just a formality and that the only step that mattered would take place in court. It could be a sticky question whether such statements disguised the existence of a final decision or instead simply amounted to a denial of dereliction of duty. The former might toll the time, although the latter would not. *Galindo*, 793 F.2d at 1509; cf. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (a federal period of limitations runs from the time a person knows of the injury and its cause, not from

the time he first realizes that the defendant breached a legal duty). A review of the record discloses some evidence suggesting that the business agent misled some drivers about the extent to which the Council's decision could be called final. We need not decide whether this should have forestalled summary judgment, however, because the drivers have not adequately preserved a claim of tolling.

The drivers' brief is a model of how not to litigate a case on appeal. It simply ignores *Freeman;* it does not acknowledge *Freeman* and then argue for tolling. The case was disposed of on motions for summary judgment after the close of discovery. The district judge relied on the materials produced during discovery. Yet the portion of the drivers' brief entitled "Factual Background" ignores the district court's opinion and the entire process of discovery. Despite Fed.R.Civ.P. 56(e), providing that "[w]hen a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleading"—and despite Circuit Rule 9(c)(1), providing that "[t]he statement of the facts [in the brief] shall be a fair summary without argument or comment"—the statement of "facts" in the drivers' brief is a tendentious narrative based entirely on the allegations of the complaint.

An argument based on tolling depends on a careful exposition of the acts said to toll the period of time. Here, for example, that would require an assessment of what both the union's business agent and the union's attorney said to the drivers. The argument section of the brief alludes briefly to two depositions and one affidavit on these subjects but does not fairly summarize them to supply the details that would be necessary for the court intelligently to evaluate the claim. For example, the brief states: "There was an impromptu meeting between [three drivers] and Margo Newman, an attorney for Local 710, on or about January 20, 1983 (Newman deposition, p. 48) or late January or early February, 1983 (Bowers' [sic] deposition, p. 21)." The brief does not discuss what happened at this meeting, even though the district court had held that Newman's statements let the drivers know that the union would not sue. And the brief mentions the Bowers deposition without discussing the fact that Newman's contemporaneous time records show that the meeting took place on January 20, which the court said the drivers had admitted. The brief does not spell out what, if anything, the record shows the business agent said to the drivers. These would be the statements critical to the drivers' position. The brief, however, rests content with general allegations of fraud and bad faith.

▮ We are persuaded, in sum, that the drivers' brief does not contain an adequate discussion of the portions of the record that bear on the events of January and February. Counsel for the drivers left it to the court to plough the record to see what would turn up. This does not comply with our rules, and it is a disservice to other litigants, whose cases languish while the judges bore through dusky papers to find material that counsel should have highlighted. When a brief does not comply with Circuit Rule 9(c)(1), we will not make the lawyer's case for him. *Sanchez v. Miller,* 792 F.2d 694, 703 (7th Cir.1986); *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 315–16 (7th Cir.1986); *Chicago & Western Indiana R.R. v. Motorship Buko Maru,* 505 F.2d 579 (7th Cir.1974). And collateral allusions to a legal issue do not require the court to decide difficult questions. *Manbourne, Inc. v. Conrad,* 796 F.2d 884, 888, 890 n. 6 (7th Cir.1986); *National Metalcrafters v. McNeil,* 784 F.2d 817, 825 (7th Cir.1986); *Hunter v. Allis-Chalmers,* 797 F.2d 1417, 1430 (7th Cir. 1986) (even an issue expressly presented for resolution is waived if not developed by argument); *Morgan v. South Bend Community School Corp.,* 797 F.2d 471, 480 (7th Cir.1986) (an argument is waived by failure to develop in the appellate brief the factual basis essential to its disposition). The drivers' brief falls short of presenting enough to require the court to pass on a claim of tolling.

The dissenting opinion frames the argument as one of "equitable estoppel" rather than "tolling". This, too, is an approach counsel for the drivers did not pursue. We are reluctant to allow estoppel, a ground of uncertain scope, to extend the time in which to file § 301 litigation, for this might undercut the certainty and prompt resolution that the Supreme Court hoped to achieve in *DelCostello* and that our subsequent decisions have assiduously pursued. As we said in *Freeman*, delay endangers labor peace. The adoption of an equitable estoppel argument in this case would unsettle the timing of § 301 suits. Before doing this, the court ought to have focused arguments from all the parties. But the failure of the drivers' lawyer to present an argument based on tolling meant that no other party addressed the point, and we do not have the benefit of an adversarial presentation. The increased risk of error engendered by a decision without argument is one of the principal reasons why appellate courts do not decide issues that have not been presented by the parties. The dissenting opinion proposes to launch this court into an uncertain part of the law without the careful consideration that focused briefing precipitates. We adhere instead to the rule that civil litigants are bound by the decisions of their lawyers, even if these decisions prove mistaken. Counsel for the drivers left the argument undeveloped, and there it shall stay.

AFFIRMED.

SWYGERT, Senior Circuit Judge, concurring in part and dissenting in part.

Although I concur with respect to the claims against Coca-Cola Company and Midwest Machinery Movers, I dissent with respect to the claim against Local 710 of the Teamsters Union. I believe that summary judgment was inappropriate because issues of material fact remain to be decided. Thus, I would reverse and remand for further factfinding on equitable tolling or estoppel.

I agree with the majority on the retroactivity of *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). *See, e.g., Landahl v. PPG Industries, Inc.,* 746 F.2d 1312 (7th Cir.1984). Therefore, the six-month statute of limitations applies, 29 U.S.C. § 160(b) (1982); *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294, and we must determine whether the drivers' complaint was timely filed. The undisputed dates relevant to this determination are the December 15, 1982 Joint Area Council (JAC) meeting and decision and the July 28, 1983 filing of the drivers' complaint. In the absence of any other allegations, the district court and the majority here clearly would be correct. The drivers filed their complaint more than seven months after the JAC rendered its decision and the statute of limitations would bar the complaint.

The district court and the majority rely upon *Freeman v. Local Union No. 135 Teamsters, etc.,* 746 F.2d 1316 (7th Cir. 1984), to dispose of the drivers' complaint as untimely. *Freeman* held that the union had no duty to challenge the arbitrator's award, *id.* at 1321–22, and that the date of the arbitrator's decision was the date when the plaintiff knew or should have known that the union breached its duty of fair representation. *Id.* at 1319. Thus, once there is a final decision, the six-month period begins to run. *Id.*

Without more, *Freeman* would dictate the outcome in this case. The majority chides the drivers for ignoring *Freeman.* Admittedly, neglecting that case was an unwise choice because it allowed both the district court and the majority here to construe this as a *Freeman* question. However, the drivers do not argue, as the *Freeman* appellants did, that the Union breached its duty by not challenging the JAC decision in court. Instead, they have two distinct arguments. First, they assert that the Union breached its duty of fair representation in failing to argue their case vigorously at the JAC meeting. Second, they assert that the statute of limitations should not bar their claim because the Union's statements "lulled" them into sitting on their rights. As a result, they delayed for

two months in reliance upon the Union's statements that it would file suit for them. This is an estoppel argument, separate from the claim of unfair representation at the JAC meeting. Thus, while the JAC's decision would normally begin the running of the statute, here the drivers raise factual issues about whether they were misled into sitting on their rights. This distinguishes the drivers' case from *Freeman*.

The majority refuses to consider the drivers' argument for suspension of the statute of limitations. While the drivers' barely adequate brief deserves the majority's criticism, I do not find it so defective as to preclude consideration of their "lulling" argument. The majority characterizes the drivers' argument as one for equitable tolling of the statute of limitations and then discards the argument as not squarely raised. I believe, however, that the drivers have at least raised an equitable estoppel argument, if not an equitable tolling argument, by the language of their briefs and the drivers' affidavits.

Equitable tolling applies in cases where the plaintiff is ignorant of the action because the defendant has fraudulently concealed it. *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946). Equitable estoppel, on the other hand, applies when the plaintiff knew of the existence of the cause of action, but the defendant's conduct caused him to delay in bringing his lawsuit.[1] "Estoppel arises where one, by his conduct, lulls another into a false security and into a position he would not take [otherwise]. . . ." *McWaters & Bartlett v. United States*, 272 F.2d 291, 296 (10th Cir.1959). The language of "lulling" appears in numerous equitable estoppel cases. *See, e.g., Glus v.*

*Brooklyn Eastern District Terminal*, 359 U.S. 231, 233, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959); *Schroeder v. Young*, 161 U.S. 334, 344, 16 S.Ct. 512, 516, 40 L.Ed. 721 (1896); *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir.1985); *City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir. 1977).

The majority criticizes the drivers for not squarely raising their equitable issue. While I would much prefer a brief that clearly asserts "tolling" or "estoppel" and thoroughly argues the facts in support of these theories, I believe that the drivers' brief at least raises the issue for our determination by using the language found in the equitable estoppel cases. In both the initial brief and the reply brief, the drivers assert that they were lulled into inaction. For example, the drivers claim:

> It was not until mid-February, 1983 that the drivers discovered that they "had been had" upon the union's announcement to them that it was through with the matter. See O'Brien Affidavit (R. 573) and Stewart Affidavit (R. 580). They had been *lulled into a false sense of security* by the union's representation on December 15, 1982 that the union expected to lose the grievance presented to JAC, but that the matter would be taken to litigation to establish the right to follow their work. See O'Brien and Stewart Affidavits, *supra*.

Appellants' Reply Brief at 4 (emphasis added). O'Brien, one of the drivers, stated that it was not until mid-February that the Union's business agent told him that the Union had abandoned their claim and that they should hire their own lawyer. Record at 575.[2] While the drivers did not file an

---

1. "Estoppel principles are applicable in actions arising under federal law." *Hass v. Darigold Dairy Products Co.*, 751 F.2d 1096, 1099 (9th Cir.1985) (citing *Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *Jablon v. United States*, 657 F.2d 1064, 1067–70 (9th Cir.1981)). In *Hass*, the Ninth Circuit pointed out that the doctrine of equitable estoppel has been accepted in labor cases. 751 F.2d at 1099. Furthermore, the hallmark of the doctrine " 'is its flexible application

... to avoid injustice in particular cases.' " *Id.* at 1100. (citing *Heckler*, 467 U.S. at 59, 104 S.Ct. at 2223).

2. Although mid-February was still within the six-month statute of limitations, the drivers allegedly delayed for two months in reliance on the Union's statements. Equitable estoppel could suspend the running of the statute until the drivers knew that the Union had abandoned them. In *Bomba v. W.L. Belvidere, Inc.*, 579

exemplary brief, they have mustered an argument that we recognize as a plea for equitable relief from the running of the statute. Rather than raising the issue merely to dismiss it, we should address it.

In considering the equitable issue, however, it becomes apparent that we must remand for further factfinding.[3] The drivers lost below on summary judgment. Summary judgment is only appropriate "when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." *Caldwell v. Miller*, 790 F.2d 589, 597 (7th Cir.1986). We view the record and any reasonable inferences drawn from it in the light most favorable to the party opposing the motion. *Id.* Also, we must accept as true all the evidence of the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "While cases involving statute of limitations defenses frequently lend themselves to summary disposition, a court should not grant summary judgment for the defendant if there is a viable issue of fact as to when the limitations period began." *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985) (citing *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith,* 494 F.2d 168, 171 (10th Cir.1974); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2734, at 421 (2d ed. 1983)). Because summary judgment is such an extreme remedy, it should not be granted unless the non-moving party cannot prevail under any discernable circumstances. *EEOC v. Liberty Loan Corp.,* 584 F.2d 853, 857 (8th Cir.1978).

Here, summary judgment was inappropriate. The drivers raised a factual issue about whether the Union's business agent, Alex Kern, made representations until mid-February that caused them to delay in filing suit. They referred to the affidavit of O'Brien. Record at 573–75. On a motion for summary judgment, we must accept as true O'Brien's assertions that Kern continued to mislead him about help from the Union. This affidavit, along with the brief's allusions to "lulling" and "misrepresentations in bad faith," allow us to infer that the Union may have impeded the drivers' pursuit of a legal remedy.

Unfortunately, the record is unclear about what exactly the Union's business agent said, when he said it, and who relied upon his statements. The district court only allowed discovery on the statute of limitations question and denied the drivers' request to depose Union president John Kellehan and Union business agent Alex Kern. When, as here, the record reveals a genuine issue, the parties should at least be allowed to offer additional evidence on the point. *See United States Shoe Corp. v. Hackett,* 793 F.2d 161, 166 (7th Cir.1986).

The Union may yet prevail upon a showing that none of the alleged misrepresentations were made. At this point, in the

---

F.2d 1067 (7th Cir.1978), we held that the defendant could be equitably estopped from raising the statute of limitations defense. *Id.* at 1071. In *Bomba,* the defendants continued to assure the plaintiffs that their demands would be met until four months before the statute of limitations ran. *Id.* at 1069. At that point, the defendants reneged on their initial assurances. *Id.* More than a year later, well beyond the statute of limitations period, the plaintiffs filed suit. *Id.* The drivers here filed only one month outside of the six-month period. If the drivers can show on remand that the Union delayed their filing of suit, they may also have a case that merits the application of equitable estoppel. *See also Walker Mfg. Co. v. Dickerson, Inc.,* 560 F.2d 1184, 1187 (4th Cir.1977), *appeal after remand,* 619 F.2d 305 (4th Cir.1980) ("If the doctrine of equitable estoppel is applicable, the statute of limitations would not begin to run until the acts or representations, causing plaintiff's delay, had ceased."). If equitable estoppel applies, the statute of limitations would not bar the drivers' claim against the Union.

**3.** The majority expresses concern over deciding an issue not presented by the parties. This concern is misplaced, however, in light of the fact that I do not suggest we decide the equitable issue. I merely recognize the appellants' argument as one for equitable relief and contend that an unresolved issue of material fact remains. Thus, any decision on the equitable issue would be for the district court to make after further factual development of the record and further adversarial proceedings.

absence of further factual proceedings, we cannot decide the issue. We should at least, however, recognize that a factual issue remains and remand for further proceedings. This is not a case where the appellants waived an issue by not raising it in the lower court. This is also not a case where the parties failed to argue an issue on appeal. While this is a case where the appellants' briefs were superficial, marginally researched, and poorly argued, as pointed out above, the drivers did manage to argue "lulling."

Although we may seek to educate and discipline lawyers for their shortcomings in egregious cases, we must also be mindful that the clients suffer when a court declines to consider inartfully drafted briefs. Thus, in a borderline case such as this, where the issue was at least raised, we should reach the issue and decide it if possible. Here, we cannot decide the issue without further factfinding. Reviewing the record and taking all reasonable inferences in favor of the appellants, material issues of fact remain regarding possible misrepresentations or misleading statements by the Union's business agent. Thus, I would reverse and remand for further proceedings on the issue of possible equitable tolling or equitable estoppel.