861 F.2d 719
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David ADAMO, Plaintiff-Appellant,
v.
HOTEL, MOTEL, BARTENDERS, COOKS AND RESTAURANT WORKERS UNION
LOCAL 24, et al., Defendants-Appellees.
 No. 87-2213.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1988.
 
 Before WELLFORD and BOGGS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Adamo appeals from the granting of summary judgment to the Hotel, Motel, Bartenders, Cooks and Restaurant Workers Union Local 24 (Union) and the Birmingham Athletic Club (BAC), Adamo's former employer, in this hybrid action for the Union's breach of its duty of fair representation and BAC's alleged breach of his employment contract, as well as his request that the court vacate an arbitrator's award. We affirm.
 
 
 2
 * On September 21, 1984, Adamo was discharged from his job as a bartender at BAC for failure to follow BAC's policy requiring him to call the Club's manager at home before refusing to serve an intoxicated guest. Adamo claims that this policy violates Michigan liquor laws, which penalize a vendor who sells liquor to an intoxicated person. Mich.Comp.Laws Sec. 436.1.
 
 
 3
 Adamo filed a grievance with the Union, and an arbitration hearing was held on February 18, 1985. On April 9, 1985, the arbitrator issued a decision ordering reinstatement, back pay and benefits, and finding that Adamo was wrongfully discharged. He also retained jurisdiction for 60 days, until the parties had determined the exact amount of damages.
 
 
 4
 On April 12, 1985, the Union contacted Adamo, and told him that his claim had succeeded in the arbitration. Three days later, the Union's Business Agent contacted Adamo, and told him that the Business Agent would contact the employer, BAC, regarding a date on which Adamo could return to work, and that he would let Adamo know the outcome of this inquiry.
 
 
 5
 On April 26, 1985, because Adamo had not heard from the Business Agent about his date of return to work, he called the Agent, who told Adamo that the employer would not allow him to return, and outlined a proposed settlement of 150% of back pay in lieu of reinstatement. Adamo replied that he would think about it.
 
 
 6
 Adamo decided that he would prefer reinstatement, and called the Business Agent to inform him of his decision on April 29, 1985. On May 3, 1985, the Business Agent called Adamo and told Adamo that he had received a letter from BAC saying that Adamo could return to work that evening. Adamo replied that he needed to have his hair cut and clean his uniform, and the Agent said that he could start work the following Wednesday, May 8, 1985. The Agent also told Adamo that he would have to work from Wednesday to Sunday, although his previous shift had been from Tuesday to Saturday. Adamo agreed to this schedule. The Agent told Adamo to call BAC's manager on May 7, 1985 to confirm his return to work the following day.
 
 
 7
 On May 7, 1985, Adamo called the manager, who told Adamo that he would have to meet with BAC's Board of Directors before he could start work, and that the Board could not meet until May 14, 1985, so Adamo could not return to work until then. The manager acknowledged that Adamo was reinstated and ready to start work. Adamo confirmed the contents of this conversation in a certified letter.
 
 
 8
 On May 14, 1985, Adamo reported to work and punched a time card. The Business Agent arrived later with Ms. Fetzer, whom he had brought as an observer. The manager and two Board members (not a quorum) were also present. One of the Board members was an attorney.
 
 
 9
 Adamo was told that, because of extensive renovations, his job no longer existed. He was offered two days' work per week and told to "go to work tonight and we'll tell you whether or not you'll work tomorrow." The employer also stated that the renovations already had forced it to lay off one bartender, and that the whole staff would be laid off by midsummer. The record shows that, although renovations did take place, they were not so extensive as to force the Club to close; it merely shifted its operations around to accommodate the work.
 
 
 10
 After some discussion, the Business Agent advised Adamo to accept an offer of $9,000 as a settlement for all his claims, and to sign a release. Adamo verbally agreed to these terms. The employer did not have either the money or the release at the meeting. Adamo asked as an additional term that his December 29, 1983 letter of recommendation be updated, and this was done. Only the date was changed. Adamo was told that he could return in ten days to pick up a check for $9,000 and sign the waiver. The meeting ended.
 
 
 11
 After leaving, Adamo began to have misgivings. He stopped at the office of his family's attorney and was advised that the settlement was unacceptable and that Adamo should call and send certified letters to BAC and the Union rejecting the settlement offer. He called BAC's manager, but could not reach the Business Agent, and sent letters rejecting the offer.
 
 
 12
 About May 19, 1985, Adamo received a letter from the Business Agent acknowledging receipt of Adamo's letter. Adamo called the Agent, who said that Adamo had "made a deal" and was bound by it. On May 20, 1985, Adamo met with the Union's attorney, who also informed Adamo that he had "made a deal."
 
 
 13
 Around the third week of June, 1985, Adamo met with the Union's Secretary/Treasurer to complain about the way in which the Business Agent was handling the situation. The Secretary/Treasurer defended the Business Agent, but said that the Union would see to it that Adamo be "made whole." Around the second week of July, 1985, Adamo drove by BAC and saw that it was open. He tried to call the Business Agent twice and left messages that the Club was open, but the Agent never returned his call. On July 16, 1985, the Business Agent sent Adamo a letter acknowledging that the Club was operating, but saying that he did not know if there were any shifts available for Adamo. Adamo then asked, in a certified letter to the Business Agent, to return to the arbitrator for further relief.
 
 
 14
 On September 17, 1985, the arbitrator, at the request of the Union, held a supplemental hearing, during which the release, which had never been signed by Adamo, was entered into evidence. Adamo claims that this is the first time that he saw either the release or the $9,000 check. On January 9, 1986, the arbitrator issued his supplemental opinion, ruling that the matter had been settled at the May 14, 1985 meeting, and ordered that the settlement reached at that meeting be carried out.
 
 
 15
 About January 21, 1986, Adamo received a certified letter from the Business Agent informing him that the Agent had received word that the release and the check were ready, and telling Adamo when he could pick up the check and sign the release. Adamo then retained counsel, who advised him not to sign the release, and who responded to the Business Agent's letter.
 
 
 16
 On February 18, 1986, Adamo's attorneys sent a letter to all parties seeking a non-judicial resolution. The attorneys for the Union made what Adamo considered to be an insufficient offer. No other offer has been made.
 
 
 17
 On May 15, 1986, Adamo filed the instant suit. On May 29, 1986, the Union and BAC filed a petition for removal to federal court. After removal was accomplished, the Union and BAC moved for summary judgment and Adamo then also moved for summary judgment. On November 23, 1987, the district court granted summary judgment to the Union and BAC, holding that: 1) the union did not breach its duty of fair representation to Adamo; 2) because the Union had not breached, Adamo could not recover against BAC; and 3) the court would not vacate the arbitrator's award. The court found that the Union had not breached its duty. It could not have sought enforcement of the original arbitrator's award because that award was not final in that the arbitrator had retained jurisdiction. In addition, the trial judge found that the Union had duly defended Adamo against BAC's argument that the settlement was binding during the supplemental hearing.
 
 II
 
 18
 On appeal, Adamo claims that the Union should have acted to enforce the arbitrator's original award, and that, by failing to do so, it breached its duty of fair representation to Adamo. He claims that the award was final as to the merits, and that the arbitrator retained jurisdiction over only the amount of damages. Thus, he claims, the trial judge was wrong in failing to reach the issue of BAC's alleged breach of contract. Finally, he maintains that the arbitrator's supplemental award is incorrect because he could not be bound by a release which he did not sign.
 
 
 19
 * The standard of review of a motion for summary judgment is that the decision to grant the motion should be affirmed if it appears that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir.1984). The evidence should be viewed in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706, 710 (6th Cir.1985).
 
 B
 
 20
 Adamo's suit is a hybrid action under Sec. 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 158.
 
 
 21
 Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on Sec. 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.
 
 
 22
 DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983) (footnote omitted). However, the two claims are "inextricably interdependent." Id. at 164-65. In other words, "[t]o prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976). This Circuit has followed this rule, reasoning that unless a plaintiff can succeed against both the Union and his former employer, he can succeed against neither. Bagsby v. Lewis Bros., Inc. of Tennessee, 820 F.2d 799, 801 (6th Cir.1971).
 
 
 23
 Thus, in analyzing Adamo's claims, we begin with an examination of his claim that the Union breached its duty of fair representation, ever mindful of the inextricable relation between this claim and Adamo's breach of contract claim against BAC.
 
 
 24
 With respect to Adamo's claim that the Union breached its duty of fair representation, the controlling case is Vaca v. Sipes, 386 U.S. 171 (1967). There, the Court summarized the law which governs actions for breach of the duty of fair representation. The Court noted that the Union has a "statutory duty fairly to represent all of th[e] employees." Id. at 177 (citations omitted). A breach of this duty occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Id. at 190 (citations omitted). The Court rejected the argument that "the individual employee has an absolute right to have his grievance taken to arbitration." Id. at 191. Instead, it held that the Union has "discretion to supervise the grievance machinery and to invoke arbitration." Ibid. "[A] union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration." Id. at 192. "[A] breach of the duty ... is not established merely by proof that the underlying grievance was meritorious...." Id. at 195.
 
 
 25
 In a subsequent case, the Court clarified the scope of the Union's broad discretion over the processing of grievances. Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974). The Court stated that the "union[ ] [has] exclusive control over the manner and extent to which an individual grievance is presented. In arbitration ..., the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit...." Id. at 58 n. 19.
 
 
 26
 In the present case, the union did not act arbitrarily or in bad faith. It defended Adamo's complaints through both the arbitration and the supplementary arbitration, even though it thought that Adamo should accept the settlement rather than return to arbitration. Thus, Adamo was represented by the Union to the fullest extent feasible, and Adamo's claim must fail.
 
 
 27
 With respect to Adamo's claim that the Union should have attempted to enforce the earlier award rather than to return to arbitration, this claim, too, is without merit. First, a union need not contest an award in court to satisfy its duty of fair representation. Bonds v. Coca-Cola Co., 806 F.2d 1324, 1326 (7th Cir.1986). Second, because the arbitrator retained jurisdiction for sixty days after issuing the first award, the union could not have enforced that award until the expiration of that period of time, and issuance of a final judgment by the arbitrator. Locals 2222, 2320-2327, Int'l Bhd. of Electrical Workers, AFL-CIO, v. New England Telephone and Telegraph Co., 628 F.2d 644, 649 (1st Cir.1980). Thus, Adamo's claim cannot succeed.
 
 
 28
 Even if the Union could have attempted to enforce the award, and even if, in hindsight, it was clear that such enforcement would have been the better course, the Union's course of conduct was not arbitrary or in bad faith. "[O]rdinary negligence, without more, cannot establish a breach of the duty of fair representation." Ruzicka v. General Motors Corp., 649 F.2d 1207, 1212 (6th Cir.1981).
 
 
 29
 Thus, for all of these reasons, we conclude that there has been no breach of the duty of fair representation in this case. Furthermore, because Adamo's claim of a breach of the Union's duty of fair representation is without merit, as noted above, his "inextricably interdependent" claim that BAC breached its employment contract can no longer be maintained. Hines, 424 U.S. at 570-71; DelCostello, 462 U.S. at 164-65; Bagsby, 820 F.2d at 801.
 
 C
 
 30
 Adamo's remaining claim is that the arbitrator's award should be vacated. An "arbitral decision is final and binding on the employer and the employee, and judicial review is limited as to both." Alexander, 415 U.S. at 54. Courts "should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes," Hines, 424 U.S. at 563, arbitration. Judicial review of arbitral decisions is "very limited." DelCostello, 462 U.S. at 164.
 
 
 31
 With this in mind, there appears to be nothing in the record that would justify reversing the district judge with respect to the arbitrator's award. Having found no breach of the Union's duty of fair representation, we have, in effect, concluded that the Union did not act arbitrarily or in bad faith throughout the course of the arbitration proceedings. There is nothing that would lead us to believe that the Union did anything less than to submit Adamo's claims to the arbitrator earnestly and completely, and the arbitrator's opinion reflects that the evidence in the case was reviewed with great care. Thus, keeping in mind our limited authority on review, we see no basis for vacating the award. We agree with the trial court that the arbitrator's award must stand. The judgment of the district court is hereby AFFIRMED.