931 F.2d 893
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GENERAL REFRACTORIES COMPANY, Plaintiff-Appellee,
v.
ALUMINUM, BRICK AND GLASS WORKERS INTERNATIONAL UNION
AFFILIATED, AFL-CIO, CLC, and Local Union 429,
Defendants-Appellants.
 No. 90-5588.
 United States Court of Appeals, Sixth Circuit.
 April 29, 1991.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 The Aluminum, Brick and Glass Workers International Union appeals the district court's decision vacating an arbitrator's decision requiring General Refractories to reinstate an employee, Carolynn Carroll, who was previously found to be suffering from silicosis, an occupational disease. On appeal we must decide:
 
 
 2
 Whether the district court properly found that the arbitrator was bound by the Kentucky Workers' Compensation Board's decision that Carolynn Carroll had silicosis.
 
 
 3
 We conclude that the district court improperly vacated the arbitrator's award in violation of the strong public policy favoring the resolution of labor disputes by arbitrators, and we shall, therefore, REVERSE.
 
 I.
 
 4
 Carolynn Carroll worked for plaintiff-appellee General Refractories until he was laid off in 1981. In 1984, Mr. Carroll filed a claim for workers' compensation benefits. Finding that Mr. Carroll suffered from silicosis, the Kentucky Workers' Compensation Board awarded him 425 weeks of disability benefits. When these benefits ran out in 1988, Mr. Carroll requested reinstatement with General Refractories. The company refused to reinstate Mr. Carroll because they believed that silicosis is an incurable and progressive disease, and that further exposure to silica dust would endanger Mr. Carroll's health. Mr. Carroll filed a grievance with his union who submitted the issue for arbitration, as provided by the collective bargaining agreement. This agreement stated that both parties would accept as final and binding the decision of a mutually selected arbitrator.
 
 
 5
 The arbitrator believed that Mr. Carroll was not entitled to reinstatement if he suffered from silicosis. However, because the arbitrator was not convinced that Mr. Carroll had silicosis, he determined that he was not bound by the Board's factual findings. The arbitrator accepted new evidence on the issue and concluded that because Mr. Carroll did not have silicosis, General Refractories should reinstate him.
 
 
 6
 General Refractories then filed this action to vacate the arbitrator's decision on the ground that the arbitrator was bound by the Board's findings of fact. The union argued that courts may overturn an arbitrator's decision only in a few limited circumstances, none of which apply here. The district court agreed with the company and vacated the arbitrator's decision.
 
 II.
 
 7
 The Supreme Court and Congress have long recognized the importance of arbitration in resolving labor disputes. As Congress provided in the 1947 Labor Management Relations Act, "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement." 29 U.S.C. Sec. 173(d). The Supreme Court, in the Steelworkers Trilogy, see Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960); Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960), expressly endorsed the vital role of arbitration in settling industrial disputes: "The present federal policy is to promote industrial stabilization through the collective bargaining agreement. A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement." Warrior & Gulf Navigation Co., 363 U.S. at 578. An arbitrator effectively serves this crucial role because:
 
 
 8
 "He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general character to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties" ... The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in her personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequences to the morale of the shop, his judgment whether tensions will be heightened or diminished ... The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.
 
 
 9
 Warrior & Gulf Navigation Co., 363 U.S. at 581-82 (quoting Shulman, Reason, Contract and Law in Labor Relations, 68 Harv.L.Rev. 999, 1016 (1955)).
 
 
 10
 After the court determines that the collective bargaining agreement calls for arbitration, arbitrators have wide discretion in resolving industrial disputes. The arbitrator "ordinarily remain[s] free to reconsider the ground covered by the court insofar as it bore on the merits of the dispute ..." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 558 (1964). In addition to resolving substantive issues, arbitrators also may decide procedural issues which arise. Id. at 557-58. Thus, in Wiley, the Supreme Court held that the arbitrator properly determined whether the procedural prerequisites to arbitration had been satisfied. As the court explained, "[o]nce it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." Id. at 557. This policy prevents delay and allows for a fuller exposition of the dispute. Id. at 557-58. Thus, in the present case, the arbitrator was free to determine the procedures by which the arbitration should proceed and whether new evidence should be considered.
 
 
 11
 Parties who agree in their collective bargaining agreements to submit their grievances to arbitration, as the parties here did, are bound by the holding of the arbitrator. Judicial review of arbitration decisions is extremely limited and courts will sustain such awards except in "the most extraordinary circumstances." Bonds v. Coca-Cola Co., 806 F.2d 1324, 1326 (7th Cir.1986). As the Supreme Court explained:
 
 
 12
 The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretations of the contract. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate.
 
 
 13
 United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 597 (1960)).
 
 
 14
 In the case before us, neither party alleges that the arbitrator ignored the collective bargaining agreement nor applied his "own brand of industrial justice." General Refractories simply alleges that the arbitrator improperly decided procedural issues: whether new evidence could be accepted and whether the arbitrator was bound by the decision of the Kentucky Workers' Compensation Board. A court, however, is not free to review such allegations.
 
 
 15
 In making its argument, General Refractories relies on an exception to the limited judicial review of arbitrators set forth in United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29 (1987) and W.R. Grace & Co. v. Local 759, 461 U.S. 757, 764 (1983). In Misco, the Supreme Court announced that the judiciary may refuse to enforce an award which contradicts a "well defined and dominant" public policy. Misco, 484 U.S. at 43. The court identified two such policies: "obedience to judicial orders and voluntary compliance with Title VII of the Civil Rights Act of 1964". Id.; see also W.R. Grace, 461 U.S. at 766. General Refractories contends that the district court properly set aside the arbitral award because by reconsidering the issue of whether Carolynn Carroll had silicosis, the arbitrator disobeyed the judicial order of the Kentucky Workers' Compensation Board finding that Carroll did in fact have silicosis. We disagree.
 
 
 16
 In announcing the rule of Misco, the Supreme Court explicitly relied on its earlier decision in W.R. Grace. The factual dispute in W.R. Grace, which gave rise to this rule, is not applicable to the present case. W.R. Grace involved an arbitral award which arguably mandated vacating a court ordered injunction. In requiring obedience to judicial orders, the Court simply stated that an arbitrator could not order a violation of a court order; he could not order the company to do an act which the company could not do voluntarily. W.R. Grace, 461 U.S. at 768. The arbitrator here, however, did not order the company to violate the law. No law prohibited the company from reinstating Mr. Carroll. In fact, Kentucky law prohibits discrimination based on illness or disability. K.R.S. 207.150 and K.R.S. 342.197. The Kentucky Workers' Compensation Board had found that in 1986 Mr. Carroll suffered from silicosis and ordered that he receive benefits. No part of that decision was disobeyed by the arbitrator hearing new evidence on whether Mr. Carroll suffered from silicosis in 1988. Because the arbitrator did not disobey a judicial order, the district court was not free to vacate his judgment under the Misco exception to the sanctity of arbitral awards.
 
 III.
 
 17
 Because of the long established policy favoring judicial deference to arbitral awards and because the arbitrator in this case did not overstep his role in his determination of Mr. Carroll's case, we hold that the district court erred in vacating the arbitrator's awards and thus we REVERSE.