**MANBOURNE, INC., a California Corporation, Plaintiff-Appellee,**

v.

**Bruce CONRAD, Defendant and Third-Party Plaintiff-Appellant,**

v.

**EMPLOYERS INSURANCE OF WAU-SAU, a mutual insurance company, James T. Lundberg, Melbourne B. Weddle and Norman A. Harris, Third-Party Defendants-Appellees.**

No. 84–3104.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1985.

Decided June 23, 1986.

---

Charles P. Graupner, Michael, Best & Friedrich, Milwaukee, Wis., for defendant and third-party plaintiff-appellant.

Wayne E. Babler, Jr., Quarles & Brady, Milwaukee, Wis. for plaintiff-appellee.

Stewart L. Etten, Ruder, Ware, Michler & Forester, Wausau, Wis. for third-party defendants-appellees.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and WRIGHT, Senior Circuit Judge.*

ESCHBACH, Circuit Judge.

Manbourne, Inc. ("Manbourne") brought this diversity action, governed by Wisconsin law, against Management Science, Inc. ("MSI") and Bruce Conrad, an officer, director, and shareholder of MSI, seeking preliminary and permanent injunctions protecting Manbourne's rights as MSI's majority shareholder. On November 13, 1984, the district court enjoined defendants from issuing stock to MSI officers and employees holding options to purchase common stock in MSI. Conrad appeals. The primary question presented by this appeal is whether the district court abused its discretion when it enjoined defendants from issu-

---

* The Honorable Eugene A. Wright, Senior Circuit Judge for the Ninth Circuit, sitting by desig-nation.

ing stock to the option-holders. For the reasons stated below, we will affirm.

I

Manbourne is incorporated in California and has its principal place of business in that state. MSI, a Wisconsin corporation with its principal place of business in Wisconsin, creates and markets computer software. In 1982 the two companies negotiated, ultimately unsuccessfully, for Manbourne to acquire MSI.

Employers Insurance of Wausau ("Employers") was a principal shareholder of MSI. It held 10,000 shares of 10% cumulative convertible preferred stock, 50,891 shares of common stock, and a debenture for approximately $227,000. Unless first redeemed by MSI, the 10,000 preferred shares were convertible at will into 100,000 common shares. Conversion was deemed effective upon presentation of the preferred stock certificate, endorsed in blank for transfer, and of written notice of election to convert.

On August 5, 1983, Manbourne purchased Employers's interests in MSI. On August 9, 1983, Manbourne surrendered to Conrad and MSI the duly endorsed preferred stock certificate and written notice of Manbourne's election to convert. The district court found that, upon surrender of the certificate and notice of election to convert. Manbourne owned 150,891, or 50.23%, of the 300,400 common shares then outstanding.

On the same day, however, MSI denied Manbourne's oral request to inspect MSI's list of shareholders. On August 12, 1983, MSI mailed notice of a special shareholders' meeting to be held on August 22, 1983. Neither Manbourne nor Employers received written notice of the scheduled meeting.

On the day of the mailing, Manbourne officials visited MSI's offices to deliver a written demand to inspect the list of shareholders. While there, they noticed a letter from MSI's president Williard Kern to MSI shareholders, and observed MSI personnel preparing an expedited mailing. They asked Conrad whether MSI was mailing notice of a special shareholders' meeting. Conrad said he was not aware of any meeting, and told them to talk to MSI's attorney. When asked for the attorney's name, Conrad refused to give it.

Between August 15 and August 17, 1983, nine of MSI's employees and directors notified MSI of their intent to exercise options on 14,900 shares of MSI common stock.[1] The stock option plan had been created in 1970 and the options were granted on several occasions between 1972 and 1982. On August 17, 1983, MSI's board of directors by unanimous consent authorized the issuance of 14,900 common shares, which would increase the number of outstanding common shares to 315,300. Manbourne then would own only 47.86% rather than 50.23% of the outstanding common shares.

Also on August 17, 1983, MSI's directors by unanimous consent amended MSI's by-laws. One amendment eliminated the shareholders' power to require a special shareholders' meeting. Another amendment provided that the shareholders could remove a director only for cause and only upon an affirmative vote of 80% of the outstanding shares.[2] Manbourne filed suit on the same day.

On August 18, 1983, the district court preliminary enjoined MSI, pending the disposition of the other issues, from (1) holding the special shareholders' meeting scheduled for August 22, 1983, (2) convening any shareholders' meeting without giving notice to Manbourne, and (3) denying Manbourne's right to inspect MSI's share-

1. Conrad owns options in 800 shares of common stock and is a MSI director and employee. Terry Howe owns options in 800 shares of common stock; he is a director and former employee of MSI. The remaining seven option-holders are MSI employees.

2. On October 20, 1983, MSI's board of directors, acting through a three-member executive committee, again amended MSI's by-laws to require a minimum of 50-days notice for a special shareholders' meeting.

holders' list.[3] On August 19, 1983, MSI issued 14,900 shares of common stock to the nine option-holders. On September 16, 1983, however, the district court amended its earlier order and enjoined MSI from issuing any common stock and ordered it to cause all stock issued after August 17, 1983, to be returned and cancelled.

After conducting evidentiary hearings in October 1983, the district court on August 24, 1984, preliminarily enjoined MSI, *inter alia,* "from issuing any ... common stock ... without giving notice in writing to ... Manbourne ... at least ten days prior to issuance. Further, if ... Manbourne ... applies to this Court for relief with respect to such issuance within said ten-day period, ... [MSI] shall continue to be enjoined unless and until the Court orders otherwise." *Manbourne, Inc. v. Conrad,* No. 83 C 1492, slip op. at 16–17 (E.D.Wis. Aug. 24, 1984) ("August 24 order").[4] MSI notified Manbourne on September 26, 1984, that it intended to issue the 14,900 shares of common stock pursuant to the stock option plan. On October 5, 1984, Manbourne applied for relief with respect to the issuance of the 14,900 shares; the issuance thus was enjoined pending further order of the court.

On November 11, 1984, the district court enjoined MSI from issuing to the option-holders the 14,900 shares of common stock. *Manbourne, Inc. v. Conrad,* No. 83 C 1492, slip op. at 9 (E.D.Wis. Nov. 11, 1984) ("November 11 order"). Conrad appeals from this order.

## II

The plaintiff bears the burden of establishing the five elements necessary for the issuance of a preliminary injunction: (1) that it has no adequate remedy at law; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm it will suffer if the preliminary injunction is not granted outweighs the irreparable harm the defendant will suffer if the injunction is granted; (4) that it has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest. *See Brunswick Corp. v. Jones,* 784 F.2d 271, 273–74 (7th Cir.1986). In deciding whether to grant or deny a preliminary injunction, the district court first makes findings of fact and conclusions of law, and then exercises its discretion to grant or deny the injunction. We review the factual determinations for clear error, and the legal conclusions *de novo. See Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1437 (7th Cir.1986). If the findings of fact are not clearly erroneous and the legal conclusions are correct, we review the district court's decision for an abuse of discretion, *id.;* however, a preliminary injunction (or denial of one) based upon a clearly erroneous factual determination or an incorrect legal conclusion constitutes an abuse of discretion. *See id.; Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380, 385, 389–90 (7th Cir.1984); *American Can Co. v. Mansukhani,* 742 F.2d 314, 326 (7th Cir.1984); *Shango v. Jurich,* 681 F.2d 1091, 1097 (7th Cir.1982).

Conrad does not dispute the district court's determinations that Manbourne established the five elements required for a preliminary injunction. Instead he argues that, as a matter of law, the district court could not enjoin the exercise of the stock options. First, he argues that the options were validly granted pursuant to a long-standing stock option plan. As he notes,

---

**3.** The district court designated its August 18, 1983, order, and orders that it issued on September 16, 1983, and May 16, 1984, as temporary restraining orders. Nevertheless, the orders did not expire by their terms within 10 days. Therefore, we consider the orders to be preliminary injunctions. *See Sampson v. Murray,* 415 U.S. 61, 86–88, 94 S.Ct. 937, 951–52, 39 L.Ed.2d 166 (1974). The distinction is not merely semantic; a preliminary injunction is appealable under 28 U.S.C. § 1292(a)(1), but a temporary restraining order is not appealable. *See Weintraub v. Hanrahan,* 435 F.2d 461, 462–63 (7th Cir.1970).

**4.** The district court's August 24 order also denied the option-holders' motion to intervene. That decision has not been appealed and is not before this court.

MSI created the plan in 1970 to encourage and retain key employees. MSI granted the options involved in this appeal between 1972 and 1982—over a year before Manbourne acquired Employers's interests in MSI. Second, he asserts that the optionholders exercised their options independently of MSI's attempt to deny Manbourne control of the company. He contends that "the options were exercised and payment tendered even before this action was commenced," Appellant's brief at 15, and that "[m]ost of the optionholders had no role at all in the decision to contest Manbourne's takeover." Reply brief at 3. Conrad concludes that the preliminary injunction inappropriately "extinguished" valid stock options. *Id.* at 4.

■ We disagree with Conrad's contention that the district court could not enjoin exercise of the stock options as a matter of law. On appeal, Conrad does not dispute that the transfer of Employers's interests in MSI to Manbourne was effective. He, therefore, has waived any argument to the contrary. *See Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir.1984) (even argument raised in brief but presented in a "prefunctory and undeveloped" manner is waived). Accordingly, we consider the transfer to be valid, and have good reasons under Wisconsin law for doing so. Under the law of that state, "[u]pon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey." Wis.Stat. § 408.301; *see also United States v. Rosebush*, 45 F.Supp. 664, 667 (E.D.Wis.1942) ("The transfer of possession of the stock, although unrecorded on the books of its issuing corporation, conveys the interest of the holder."). Manbourne thus acquired Employers's interests in MSI when it took possession of the preferred and common stock certificates. *See* Wis.Stat. § 408.313 (delivery occurs when purchaser acquires possession).

■ By his silence, Conrad also has conceded that Manbourne's conversion of its 10,000 preferred shares into 100,000 common shares was valid. *See Hershinow*, 735 F.2d at 266; *see also General Motors Acceptance Corp. v. Central National Bank of Mattoon*, 773 F.2d 771, 778 n.5 (7th Cir.1985) ("By failing, on appeal, to address the district court findings ..., [the] Bank has conceded that they were proven."). Even if Conrad had not waived his challenge to the validity of the conversion of shares, the conversion was effective. A corporation's articles of incorporation determine the rights of its various classes of stock. *See Franzen v. Fred Rueping Leather Co.*, 255 Wis. 265, 272, 38 N.W.2d 517, 520 (1949). Article 4(f) of MSI's Restated Articles of Incorporation provide:

> In order to exercise the conversion privilege, the holder of any Preferred Shares to be converted shall surrender the certificate ... to the transfer agent of the Corporation, at offices which the Corporation shall cause to be maintained in the City of Appleton, Wisconsin, duly endorsed in blank for transfer, accompanied by written notice of election to convert such Preferred Shares....
>
> ... Such conversion shall be deemed to have been effected on the date on which the certificates for such Preferred Shares have been surrendered as provided above, and the person in whose name any certifcate or certificates for Common Stock are issuable upon such conversion shall be deemed to have become on such date the holder of record of the shares represented thereby.

On August 9, 1983, Manbourne presented the duly endorsed convertible preferred stock certificate and written notice of election to convert to Conrad, who was MSI's controller and had possession of MSI's stock transfer record, at MSI's offices in Appleton, Wisconsin.[5] Manbourne, therefore, became the owner of 150,891 shares of MSI's common stock.

---

**5.** MSI acted as its own transfer agent for the attempted issuance of 14,900 shares of common stock to the option-holders.

■ Although MSI refused to record the two transactions, Wis.Stat. § 408.401 required it to record the transfer, and Article 4(f) of its Restated Articles of Incorporation obligated it to record the conversion. *See also* Wis.Stat. § 182.25 (authorizing court to order corporation to record transfer); *Herdegen v. Cotzhausen,* 70 Wis. 589, 36 N.W. 385 (1888) (corporate secretary under duty to record transfer); *In re Klaus,* 67 Wis. 401, 29 N.W. 582 (1886) (duty to record transfer is purely ministerial). Thus, despite MSI's refusal to list Manbourne as a shareholder of record, Manbourne owned 150,891 shares, or a majority, of MSI's common stock as a result of the transfer and conversion. *See Rosebush,* 45 F.Supp. at 667 (transfer of possession of certificate, although unrecorded, conveys ownership under Wisconsin law); *see also Loretto Literary & Benevolent Institution v. Blue Diamond Coal Co.,* 444 A.2d 256 (Del.Ch.1982) (transfer, although unrecorded, conveys beneficial interest under U.C.C. § 801.301); *Rogers v. Rogers,* 271 Md. 603, 319 A.2d 119 (1974) (transfer, although unrecorded, conveys ownership under U.C.C. § 801.301). As a shareholder of MSI, Manbourne was owed a fiduciary duty by MSI's directors. *See Rose v. Schantz,* 56 Wis.2d 222, 228, 201 N.W.2d 593, 597 (1972) (The "fiduciary duty of a director is owed to the individual stockholders as well as to the corporation."); *see also Borak v. J.I. Case Co.,* 317 F.2d 838, 842 (7th Cir.1963) (applying Wisconsin law), *aff'd,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Wisconsin law required MSI's directors to treat Manbourne with fidelity and good faith, and prohibited them from using their positions to further their private interests. *See Grognet v. Fox Valley Trucking Service,* 45 Wis.2d 235, 242, 172 N.W.2d 812, 816 (1969).

■ Nevertheless, MSI's directors, in breach of their fiduciary duty to Manbourne, denied Manbourne's rights as a shareholder. First, MSI refused to record the transfer and conversion of shares in violation of Wis.Stat. § 408.401 and its Restated Articles of Incorporation. Second,

Wis.Stat. § 180.43 required MSI to permit Manbourne to examine MSI's corporate records, including its list of shareholders, for any reasonable purpose germane to Manbourne's status as a shareholder. *See A & K Railroad Materials, Inc. v. Green Bay & Western Railroad Co.,* 437 F.Supp. 636, 645 (E.D.Wis.1977). That § 180.43 speaks of a "shareholder of record" does not permit MSI to deny Manbourne's inspection rights on the ground that Manbourne was not a shareholder of record; MSI "prevented ... [Manbourne] from complying with the requirements of ... [registration] and having done so, ... [MSI is] not in a position to assert such noncompliance as the reason for denying" Manbourne its right to inspect MSI's list of shareholders. *Beck v. Beck Investment Co.,* 249 Wis. 5, 8, 23 N.W.2d 454, 456 (1946). Thus, MSI's denial of Manbourne's inspection rights violated Wis.Stat. § 180.43. Third, MSI did not mail notice of the special shareholders' meeting that it called for August 22, 1983, to Manbourne, or even to Employers, Manbourne's predecessor-in-interest. This action violated Manbourne's right to notice of shareholders' meetings under Wis.Stat. § 180.24 and its right to vote its shares under Wis.Stat. § 180.25. *See Beck,* 249 Wis. at 7, 23 N.W.2d at 455. Fourth, under the facts of this case, MSI's amendment of its by-laws to entrench its directors in power breached the directors' fiduciary duty towards Manbourne. *See O'Leary v. Board of Directors, Howard Young Medical Center, Inc.,* 89 Wis.2d 156, 167–69, 278 N.W.2d 217, 221–22 (Ct. App.1979).

■ The district court further found that "MSI's issuance of stock to the option holders would be done in furtherance of its scheme to deprive Manbourne of its rights as majority shareholder." There is ample evidence that supports the district court's determination. First, Conrad and the other eight option-holders did not attempt to exercise their options to purchase a block of stock sufficient to deprive Manbourne of control until after MSI had begun to deny Manbourne's rights as a shareholder. Sec-

ond, the nine option-holders gave MSI notice of their intent to exercise their options almost simultaneously, *viz.*, within a period of only three days. Third, two of the option-holders—Conrad and Terry Howe—were MSI directors; the remaining seven option-holders were MSI employees who were subject to the suggestions of MSI's management. Fourth, the number of options exercised would have been barely sufficient to deprive Manbourne of its status as MSI's major shareholder. The number of options exercised, the timing of the exercise of the options, and the option-holders' relationship with MSI support the reasonable inference that the option-holders' exercise of the stock options was part of MSI's attempt to frustrate Manbourne's rights. The district court's finding that the exercise of the options was part of MSI's directors' scheme to deny Manbourne's rights is, therefore, not clearly erroneous.

■ We thus disagree with Conrad's assertion that the options were exercised independently of MSI's attempt to deny Manbourne control, and with his argument that the exercise of the options could not be enjoined as a matter of law.[6] We are not presented with unaffiliated individuals independently exercising their options to purchase stock in a corporation that is the subject of a takeover bid, and we do not decide whether the exercise of stock options could ever be enjoined in such a case. Rather, we are faced with corporate directors and employees exercising options as part of a plan to deprive the majority shareholder of control. Under Wisconsin law, the directors of a corporation cannot sell stock to a confederate for the purpose of placing majority control in hands friend-

ly to them. *See Luther v. C.J. Luther Co.*, 118 Wis. 112, 122–23, 94 N.W. 69, 72–73 (1903). Similarly, although the act is within their authority, the directors, under the circumstances presented in this case, cannot amend the corporate by-laws for the purpose of entrenching themselves in control. *See O'Leary*, 89 Wis.2d at 167–69, 278 N.W.2d at 221–22. We conclude that MSI's directors arranged for the option-holders to exercise their options for the purposes of placing majority control in friendly hands, and maintaining themselves in office. We thus hold that the district court did not abuse its discretion by enjoining the issuance of common stock to the option-holders.

Contrary to Conrad's assertion, the preliminary injunction did not extinguish the stock options. The district court invited the defendants to "request relief from this order at such time as the plaintiff has been able to call a special meeting of the shareholders and to vote its shares as the majority shareholder of MSI." November 11 order at 9. Manbourne called a special shareholders' meeting, and assumed control of MSI on November 16, 1984. On November 20, 1984, four of the option-holders moved to intervene, and to vacate the preliminary injunction against the issuance of common stock; however, they withdrew their motions on April 4, 1985. On April 7, 1986, the district court in its final judgment order directed that "MSI issue shares of its stock to any option holders wishing to exercise their options, pursuant to the terms of those options." *Manbourne, Inc. v. Conrad*, No. 83 C 1492, slip op. at 2 (E.D.Wis. Apr. 7, 1986). Rather than extinguishing

6. Because the district court's finding is not clearly erroneous, the authority upon which Conrad relies is inapposite. In none of the three cases which he cites—*King v. Stevenson*, 445 F.2d 565 (7th Cir.1971); *Klaus v. Hi-Shear Corp.*, 528 F.2d 225 (9th Cir.1975); and *Wyles v. Campbell*, 77 F.Supp. 343 (D.Del.1948)—did the management of a corporation deprive the majority shareholder of its rights, such as the right to inspect the shareholders' list or to receive notice of special shareholders' meetings. Indeed, the *Wyles* court acknowledged that "corporate shares may not be issued for an improper

purpose, as for instance to maintain control of the corporation," but, in stark contrast to this case, found that there was no evidence that shares would be issued for an improper purpose. 77 F.Supp. at 351.

Further, Conrad did not argue that the issuance of the stock options was a permissible exercise of the directors' business judgment. He, therefore, waived any arguments as to Wisconsin's business judgment rule. *See, e.g., EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 892 (7th Cir.1985).

the options, the preliminary injunction prevented the options from being used as part of MSI's scheme to deprive Manbourne of its rights as a shareholder.[7]

### III

For the above reasons, the preliminary injunction issued on November 11, 1984, is AFFIRMED.

---

7. We reject Manbourne's argument that this court lacks appellate jurisdiction to hear this appeal. The district court's November 11, 1984, order was not repetitive of its August 24, 1984, order. Thus, Conrad's appeal from the November 11 order is properly before us pursuant to 28 U.S.C. § 1292(a)(1).