EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Petitioner,

v.

CHATEAU NORMANDY, INC., and Atrium Structures, Inc., Respondents.

No. IP 87–315–C.

United States District Court, S.D. Indiana, Indianapolis Division.

April 8, 1987.

Maria C. Whittaker, E.E.O.C., Indianapolis, Ind., for petitioner.

Robert C. Bruner, Indianapolis, Ind., for respondents.

BARKER, District Judge.

### ENTRY

This matter is before the Court on the petitioner's March 27, 1987 petition for preliminary relief and on the respondents' April 6, 1987 motion to dismiss that petition. On April 6, 1987, the petitioner filed its response to the motion to dismiss, and on April 7, 1987, the respondents filed their reply brief. On April 7, 1987, the parties stipulated to the facts relating to the petition for injunctive relief.

Having read and considered the briefs, the stipulated facts, the pleadings and the other submissions in the record of this cause, the Court now DENIES the motion to dismiss the petition and DENIES the petition for a preliminary injunction. The reasons for the Court's rulings are set forth in the attached memorandum.

### MEMORANDUM

#### I. *Background*

On March 27, 1987, the petitioner, Equal Employment Opportunity Commission ("EEOC"), filed its petition for preliminary relief pursuant to 42 U.S.C. § 2000e–5(f)(2). The EEOC seeks to enjoin the respondents, Chateau Normandy, Inc. and Atrium Structures, Inc., from requiring the charging party, Mary Dusel, to take a mandatory pregnancy leave from her employment as a waitress.

On April 6, 1987, the parties represented to the court that the facts necessary for resolution of the pending petition could be stipulated. Accordingly, on April 7, 1987, the parties stipulated, in pertinent part, as follows:

\* \* \*

3. Mary Dusel is a waitress at the Chateau Normandy Restaurant located at 8250 Dean Road, Indianapolis, Indiana.

4. Her duties include serving food and beverage to the general public, clearing dishes, and cleaning tables in the public serving area. Her duties require her to step up and down onto a terraced dining area.

5. Ms. Dusel has to go up and down a stairway to get to and from her workplace.

6. When the outside terrace is open to the public, Ms. Dusel's duties may require ascending or descending about five steps.

7. Ms. Dusel presently lives at 7921 Benjamin Drive, Indianapolis, Indiana.

8. Ms. Dusel was hired on October 10, 1985 and has been working as a waitress at Chateau Normandy since December 6, 1985.

9. Ms. Dusel presently works from 10:30 a.m. to 2:30 p.m. four days a week.

10. The document attached to the Affidavit of Mary Dusel as Exhibit II is a true and accurate copy of Chateau Normandy's Employment Policy Relating to Pregnancy.
[The policy stated in Exhibit II is as follows: Our Company's policy towards leave of absence because of pregnancy is two fold. We do not have a set policy relative to a specific time for maternal absence after delivery. We do, however, have a prenatal policy determined by the activity of the employee. Where the pregnant employee meets and serves the public in one of our restaurants, she is limited to active duty through her seventh month or to the time when her appearance and accompanying clumsiness causes distress for our customers. Where the employees' activity is non-public and in the desk type category, an additional *one* month may be added.
In all instances where continued employment represents a significant risk to both mother and the unborn child, the Company will determine when this risk is present.]

11. The Respondent's Employment Policy Relating to Pregnancy is uniformly applied to all employees, including Mary Dusel.

12. Mary Dusel did not request to be put on maternity leave at the end of March, 1987. Based upon the Respondent's Employment Policy Relating to Pregnancy, the Assistant Manager, Anna Leahy, informed Mary Dusel that she would be put on maternity leave at the end of March, 1987.

13. On March 6, 1986, Ms. Dusel gave a copy of the Interim Interpretive Guidelines of the Pregnancy Discrimination Act promulgated by the EEOC to the Assistant Manager, Anna Leahy.

\* \* \*

[A copy of the Guidelines was attached to the charging party's affidavit.]

14. Mary Dusel filed a charge alleging sex discrimination with the EEOC on March 19, 1987.

15. The Respondent has not impeded the investigation of the Petitioner in this matter.

16. A representative of the EEOC delivered a copy of Mary Dusel's charge of discrimination to the Respondents on March 20, 1987.

17. The Respondents have agreed that they will not retaliate against Ms. Dusel or other employees of Chateau Normandy for any actions taken by such employees related to or arising from this cause.

18. Respondent first received a written request for information from the EEOC on March 31, 1987. On March 20, 1987 a representative of the EEOC made oral inquiries about the company's policy relating to Mary Dusel's charge of discrimination.

19. Ms. Dusel is presently able to perform her job duties as a waitress at the Chateau Normandy in a satisfactory manner.

20. The parties stipulate to the admissibility into evidence of the deposition of Dr. Lynda Smirz.

21. On April 3, 1987, Respondent offered to put Ms. Dusel on paid pregnancy leave, including wages and tips, through April, 1987.

The parties also represented to the court that these are all of the material facts that would have been presented had a hearing been held on the petition. Now, with this set of agreed facts in mind, the court turns to resolve the pending motions.

## II. *Motion to Dismiss*

The respondents argue that the petition for a preliminary injunction should be dismissed for failure to state a claim upon which relief can be granted. They do so on two bases. First, they argue that the EEOC's petition is unverified and therefore fails to meet the standard set forth by the Supreme Court in *Sampson v. Murray,* 415

U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1973), regarding the proper form for such petitions. Second, they argue that preliminary relief is not appropriate in this case based upon an analysis of the four factors traditionally used by courts to decide whether preliminary injunctive relief is warranted pursuant to Rule 65 of the Federal Rules of Civil Procedure. Because this second argument requires analysis that would be duplicative of the analysis required to rule on the petition itself, the argument will not be separately addressed here. The argument will be addressed, insofar as it is necessary to do so, in part III below.

■ As to the first basis for dismissal, the respondents are correct in arguing that a verified showing of irreparable harm is required in support of a petition for injunctive relief. However, the respondents have overlooked, or at least understated, the effect of, the affidavit of Michael J. Vlantis, the District Coordinator of the Indianapolis District Office of the Equal Employment Opportunity Commission, which was submitted with the petition for a preliminary injunction. In that affidavit, Mr. Vlantis states that it is his belief

> that the defendant's unlawful conduct has had, and will continue to have, the effect of preventing women from working on the basis of pregnancy and of precluding or discouraging the Charging Party and others from asserting their rights under Title VII. Unless preliminary relief is granted, it may reasonably be anticipated that Defendant's unlawful conduct will continue, thereby preventing Charging Party and other employees from working on the basis of pregnancy in violation of Title VII, and discouraging Charging Party Mary Dusel and other potential charging parties from asserting their rights under Title VII.

These statements provide sufficient allegations of irreparable harm to prevent dismissal for failure to submit a petition in proper form. Accordingly, the respondents' motion to dismiss the petition for failure to state a claim upon which relief can be granted is DENIED.

### III. *Petition for a Preliminary Injunction*

Before deciding whether a preliminary injunction should issue, the Court must decide what standard applies to cases where the EEOC seeks preliminary relief. This threshold question arises because of a conflict between the circuits as to the applicable standard. *Compare EEOC v. Anchor Hocking Corp.,* 666 F.2d 1037 (6th Cir. 1981) (traditional Rule 65 standard applies), *with EEOC v. Pacific Press Publishing Ass'n,* 535 F.2d 1182 (9th Cir.1976) (no showing of irreparable harm required for injunction to issue). No panel of the Seventh Circuit has addressed the issue, although one district court in this circuit has. *See EEOC v. Bay Shipbuilding Corp.,* 480 F.Supp. 925 (E.D.Wis.1979) (holding traditional Rule 65 standards apply).

The language of the statute is unclear. Section 2000e–5(f)(2) provides:

> Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, ... may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with Rule 65 of the Federal Rules of Civil Procedure.

This provision could be interpreted to say that preliminary relief *shall* issue whenever the Commission concludes that prompt judicial action is necessary to carry out the Act's purposes. Or, the provision could be interpreted to allow the Commission to bring an action whenever it concludes that prompt judicial action is necessary, but that preliminary relief will issue only when such relief would ordinarily be available under Rule 65.

There is some Seventh Circuit precedent for the proposition that when an administrative agency seeks preliminary relief under a specific statute authorizing such a remedy, traditional standards governing preliminary relief are not applicable. *See*

*Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1219 (7th Cir.1979) (involving the Commodity Exchange Act, 7 U.S.C. § 13a–1); *Illinois Bell Tel. Co. v. Illinois Commerce Comm'n*, 740 F.2d 566, 571 (7th Cir.1984) (involving the Communications Act of 1934, 47 U.S.C. § 401(b)). However, the language of each of those statutes is distinguishable from the language used in section 2000e–5(f)(2). In neither the Commodities Exchange Act nor the Communications Act of 1934 did the statute refer expressly to Rule 65 of the Federal Rules of Civil Procedure or state that preliminary relief shall be issued in accordance with that rule.

■ More importantly, the legislative history of section 2000e–5(f)(2) provides a clear picture of what Congress intended the applicable standard to be. In *EEOC v. Anchor Hocking Corp.*, 666 F.2d 1037 (6th Cir.1981), the Sixth Circuit carefully summarized the legislative history of section 2000e–5(f)(2) as follows:

> Section 706(f)(2) was part of the 1972 amendments to Title VII; the EEOC was authorized, by these amendments, for the first time to bring enforcement actions. The original Senate bill, S. 2515, provided that the EEOC would have the authority to bring actions for preliminary injunctions and that such actions would be governed by Rule 65. The report which accompanied the bill specifically addressed the issue of irreparable harm, stating that the "[a]ppropriate standard for the courts to apply was aptly stated ... in *United States v. Hayes International Corp.*, [415 F.2d 1038, 1045 (5th Cir.1969)];
>
> [I]rreparable injury would be presumed from the very fact that the statute has been violated...."
>
> S.Rep. No. 92–415, 92d Cong., 1st Sess. 21 (1971).
>
> As stated, the original Senate bill provided that temporary relief would be governed by Rule 65; but the reference to Rule 65 was stricken before it passed the Senate. 117 Cong.Rec. 39739 (1971).
>
> By contrast, the House bill, H.R. 1746, provided:

> [N]o temporary restraining order or other preliminary or temporary relief shall be issued absent a showing that substantial and irreparable injury will be unavoidable.
>
> 117 Cong.Rec. 31980 (1971).
>
> Thus, while the Senate bill would not have required any showing of irreparable injury, the House bill would have required a stronger showing ("that substantial and irreparable injury will be unavoidable") than traditionally required by equity. The resolution of the two provisions is explained as follows in the Joint Explanatory Statement of Managers at the Conference on H.R. 1746:

> The Senate amendment authorized the Commission or the Attorney General to seek preliminary injunctive relief. The House bill authorized the Commission to seek preliminary relief and required a showing that substantial and irreparable injury to the aggrieved party would be unavoidable. The Senate receded with an amendment that authorized the Commission or the Attorney General to seek preliminary injunctive relief and a provision that Rule 65 of the Federal Rules of Civil Procedure should govern all actions brought under this subsection.
>
> S.Rep. No. 92–681, 92d Cong., 2d Sess. 18 (1972), *reprinted in* [1972] U.S.Code Cong. & Ad. News 2137, 2179, 2182.
>
> 666 F.2d at 1041–42.

From the summary, the Sixth Circuit panel then reasoned:

> The Senate, when it initially passed the bill, struck the reference to Rule 65 for the reason that such reference was viewed as inconsistent with the intention that a showing of irreparable injury would not be required. At conference, the House insisted that the requirement of a showing of irreparable injury more stringent than equity had traditionally required be included. The Senate receded as to its position that no showing of irreparable injury would be required, and the House agreed that a showing of irreparable injury to the extent that equity has traditionally required would be sufficient. This was intended to be accomplished by striking the stringent wording

of the House bill and reinserting the requirement that temporary relief would be granted in accordance with Rule 65.

This interpretation of the statute, as finally enacted, is further supported by the widely accepted rule of statutory construction that statutes are to be interpreted with reference to the general law and, where there is no indication to the contrary, given a meaning that is consistent with such law. *United States v. Cox,* 593 F.2d 46, 49 (6th Cir.1979); *United States v. Monasterski,* 567 F.2d 677, 681–82 (6th Cir.1977); *Tarlton v. Saxbe,* 507 F.2d 1116, 1122–23 n. 14 (D.C.Cir. 1974). There is nothing in this legislative history that indicates that, as the statute was ultimately enacted, Congress intended to abandon the time-honored requirement of a showing of irreparable injury.

666 F.2d at 1042. I concur with the sound reasoning of the *Anchor Hocking* court. Therefore, the petition for a preliminary injunction shall be evaluated in view of the traditional standard imposed under Rule 65.

On that standard, the Seventh Circuit has spoken. "The task for a district judge asked to grant a preliminary injunction is to compare the irreparable harm to the plaintiff if the injunction is denied, weighted by the likelihood that the denial would be erroneous because the plaintiff will prevail in the plenary trial, with the irreparable harm to the defendant if the injunction is granted, weighted by the likelihood that the grant would be erroneous because the defendant, not the plaintiff, will prevail in the trial." *Dynamics Corp. v. CTS Corp.,* 794 F.2d 250, 252 (7th Cir.1986). "If both parties are likely to suffer the same amount of irreparable harm, so far as estimation is possible, then likelihood of success becomes decisive." *Id. See also Manbourne, Inc. v. Conrad,* 796 F.2d 884, 887 (7th Cir.1986) (stating that the plaintiff must prove: 1) that it has no adequate remedy at law, 2) that it will suffer irreparable harm if the preliminary injunction is not issued, 3) that the irreparable harm it will suffer if the preliminary injunction is not granted outweighs the irreparable harm the defendant will suffer if the in-

junction is granted, 4) that it has a reasonable likelihood of prevailing on the merits, and 5) that the injunction will not harm the public interest.)

 With these statements in mind, the Court turns first to the alleged irreparable harm to the plaintiff. This is the requirement that seems to present the most difficulty to the EEOC. If there is no irreparable harm, no injunction should issue. The EEOC argues that "[t]he EEOC's inability to preserve the continued employment of Ms. Dusel in the face of policy which on its face unlawfully discriminates against employees on the basis of pregnancy, weakens the credibility, integrity and power of the EEOC as a law enforcement agency and jeopardizes its ability to enforce public policy and fulfill the mission entrusted to it by Congress." Plaintiff's Memorandum in Support of Petition for Preliminary Relief, at 8. The Commission further argues that "[i]f the Commission did not seek to restrain employers from enforcing such policies, they would view that as a license to continue their unlawful employment practices because they will conclude, as they must, that the EEOC is relatively powerless to stop them no matter how egregious their acts." *Id.*

It is not necessarily true that employers will conclude that the EEOC is relatively powerless to stop them if the EEOC does not seek injunctive relief to restrain employers from enforcing policies that the EEOC believes violate the Act. Employers saddled with liability from an adverse decision on the merits at trial, including backpay with interest and a declaration that the policy is unlawful, will be forced to conclude that the EEOC can stop unlawful employment practices and policies.

Some courts have hinted that where a respondent is impeding the EEOC's ability to investigate the charges against that respondent, injunctive relief may be proper. *See EEOC v. Bay Shipbuilding Corp.,* 480 F.Supp. 925, 928 (E.D.Wis.1979); *EEOC v. Lockheed Elec. Co., Inc.,* 461 F.Supp. 242, 245 (S.D.Tex.1978). However, the EEOC has presented no evidence suggesting that failure to award preliminary relief here will preclude or even hinder its ability to proceed with its investigation of the charges

against the present respondents. Therefore, assuming its claim is meritorious, the EEOC will be able to obtain all of the relief to which it is entitled after a final resolution on the merits.

Of course, the existence of irreparable injury may also be established as to the charging party. However, the respondents here have agreed to pay Ms. Dusel wages and tips that she could have earned through April 30, 1987, the date on which she would have voluntarily accepted pregnancy leave. Therefore, there is no irreparable injury to her resulting from a denial of injunctive relief.

In sum, no irreparable injury will occur to either the EEOC or to Ms. Dusel as a result of the denial of the petition. Accordingly, the petition must be DENIED.

In light of the issues presented in this case, the Court will expedite a trial on the merits. Consistent therewith, the Court will direct the magistrate assigned to this cause to hold a pre-trial conference as soon as possible to determine whether the matter can be resolved on summary judgment or, if trial is required, to determine the earliest possible date for same.