Erin Colleen SMITH, Plaintiff,

v.

The OFFICE OF CIVILIAN HEALTH AND MEDICAL PROGRAM OF the UNIFORMED SERVICES (CHAMPUS), a subdivision of the Department of Defense of the United States of America, and William Perry, in his official capacity as the Secretary of Defense for the United States of America, Defendants.

No. IP 94–1396 C.

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 29, 1994.

Steven J. Cohen, David Becsey, Zeigler Carter Cohen & Koch, Indianapolis, IN, for plaintiff.

Gerald A. Coraz, Asst. U.S. Atty., Indianapolis, IN, for defendant.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

Plaintiff, Erin Colleen Smith, brings this action for declaratory and injunctive relief challenging the presumed denial by the Office of Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS") of authorization for high-dose chemotherapy ("HDC") with peripheral stem cell rescue ("PSCR") as treatment for her breast cancer. Defendants CHAMPUS and William Perry, in his official capacity as the Secretary of Defense for the United States (collectively "CHAMPUS"), have moved for summary judgment.[1] For the reasons stated below, Defendants' motion is denied. Summary judgment in favor of Plaintiff is granted, making her motion for preliminary injunction moot.

## I. BACKGROUND

Plaintiff is married to Danny Smith, an Air Force retiree. Plaintiff and her husband are entitled to health care benefit coverage with CHAMPUS. 32 C.F.R. § 199.3.

Plaintiff is forty years old. In November, 1993, Plaintiff was diagnosed with breast cancer. The cancer has spread to Plaintiff's lymph nodes. Her doctors have prescribed a treatment course that includes HDC with PSCR ("HDC–PSCR"). If the HDC–PSCR treatment does not begin by October 1, 1994, it is the opinion of Plaintiff's doctors that she will be forced to undergo a course of adjuvant (conventional dose palliative) chemotherapy which will significantly delay administration of the HDC–PSCR treatment, adversely affect Plaintiff's health so that HDC–PSCR treatment cannot be administered, and may render the HDC–PSCR treatment less beneficial. In short, Plaintiff's doctors believe that immediate treatment with HDC–PSCR is Plaintiff's best opportunity for sustained health and life.

Last summer Plaintiff made a claim for a pre-treatment coverage commitment from CHAMPUS. In a letter dated August 2, 1994, David S. Bogner, M.D., Medical Director of CHAMPUS, denied coverage to Plaintiff, reasoning that CHAMPUS does not cover experimental therapy and that "CHAMPUS must continue to consider ... [HDC–PSCR] therapy as investigational for the treatment of breast carcinoma." Plaintiff then requested an expedited review of CHAMPUS' denial of coverage. In a letter dated September 14, 1994, Bogner responded that despite the materials supplied to him by Plaintiff (including federal district court rulings granting injunctive relief for CHAMPUS patients seeking similar therapies, three affidavits of oncologists stating, *inter alia,* that the requested treatment is not experimental, and an article from the *New England Journal of Medicine*), CHAMPUS stood by its determination that coverage for HDC–PSCR would be denied as experimental. Plaintiff proceeded to file the instant action.

## II. DISCUSSION

### A. The Merits of the CHAMPUS determination

■ The proper standard for reviewing the CHAMPUS determination is the arbi-

---

1. Defendants' memorandum in response to Plaintiff's motion for injunctive relief and in support of Defendants' motion for summary judgment makes reference to Mail Handlers Benefit Plan, which Defendants contend Plaintiff named as a defendant but the parties have since agreed may be dismissed without prejudice. A review of the materials in front of this Court reveals no reference to such a party.

trary and capricious standard. *Wheeler v. Dynamic Engineering, Inc.*, 850 F.Supp. 459, 464 (E.D.Va.1994) (citing *Woods Psychiatric Institute v. U.S.*, 925 F.2d 1454 (Fed.Cir. 1991).

> In applying this standard, this "court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

*Western & Southern Life Ins. Co. v. Smith*, 859 F.2d 407 (6th Cir.1988) (citations omitted). An agency action is properly found to be arbitrary and capricious where:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to difference in view or the product of agency expertise.

*Petry v. Block*, 737 F.2d 1193, 1198 (D.C.Cir. 1984) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43–45, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)).

■ In the instant case CHAMPUS justifies its decision on the following bases:

1. CHAMPUS policy precludes it from cost-sharing for experimental and investigational procedures or treatment regimens.

2. Based on studies conducted in 1988, CHAMPUS considers HDC–PSCR to be experimental/investigational. Nothing to date has justified to CHAMPUS a departure from this position.

3. HDC–PSCR is analogous to bone marrow transplantation, which is explicitly defined by CHAMPUS to be investigational.

4. Other third party payors such as Blue Cross and Blue Shield Association ("BC/BS") and Federal Employee Health Benefits Program ("FEHBP") do not cover HDC–PSCR.

5. Neither technology assessments, scientifically controlled studies or current medical literature have yet shown that high dose chemotherapy with PSCR for the treatment of breast cancer is safe, effective and superior to existing therapies. In order for CHAMPUS to adopt a new benefit, these elements must be demonstrated.

*See* Affidavit of Martha M. Maxey. Unless these reasons are arbitrary or capricious, the CHAMPUS decision must stand.

Many, if not all, of CHAMPUS' arguments have been raised in at least three prior cases involving CHAMPUS' denial of coverage for HDC–PSCR to patients with advanced breast cancer. *See Wheeler*, 850 F.Supp. 459; *Gripkey v. Mail Handlers Benefit Plan*, 1994 WL 276265, No. 3:94–378–0 (D.S.C. Feb. 14, 1994); *Hawkins v. Mail Handlers Benefit Plan*, 1994 WL 214262, No. 1:94CV6 (W.D.N.C. Jan. 28, 1994). In all of these cases, relief (declaratory and/or injunctive) was granted to the plaintiff.[2]

### 1. HDC–PSCR as Analogous to Bone Marrow Transplant Treatment

CHAMPUS explicitly precludes coverage for a non-exclusive list of over sixty "investigational or experimental" treatments. Although HDC–PSCR is not included in this list, bone marrow transplants are. CHAMPUS argues that HDC–PSCR is justifiably excluded from treatment either because it falls within the definition of bone marrow transplant or because the procedure, if not identical, is similar.

The evidence before the Court is clear that Plaintiff is not having a bone marrow transplant.

> [R]ather, Plaintiff is having a ... [PSCR]. Although the two procedures are similar in that they both provide support for a patient receiving high dose chemotherapy, they ... are distinct procedures. In bone marrow transplantation, marrow is collected from a patient. However, the Plaintiff is not having her marrow collected. She will have white blood cells removed from

---

**2.** Plaintiff has also submitted two other cases which deal with the same subject matter but are neither available on-line nor in published form. *See Gardner v. Mail Handlers Benefit Plan, No.* 94–0652 (D.N.M. July 1, 1994); *Mashburn v. Mail Handlers Benefit Plan,* No. 94–0549, 1994 WL 715962 (M.D.Tenn. Aug. 4, 1994).

her blood stream and reinfused after the administration of high dose chemotherapy. *Wheeler*, 850 F.Supp. at 468. Therefore, the section cited by CHAMPUS excluding coverage for autologous bone marrow transplantation does not apply to Plaintiff's case. *Id.*

If anything, the fact that bone marrow transplants are explicitly excluded from coverage in certain cases while HDC–PSCR is not actually supports Plaintiff's argument for coverage. If the procedures are similar and have both been available for years and one is explicitly excluded, the natural conclusion is that the other (HDC–PSCR) was not intended to be excluded.

### 2. HDC–PSCR as Investigational Procedure

The general exclusion for experimental or investigational procedures under CHAMPUS coverage is set forth in 32 C.F.R. § 199.4(g)(15):

> Not in accordance with accepted standards, experimental or investigational. Services and supplies not provided in accordance with accepted professional medical standards; or related to essentially experimental or investigational procedures or treatment regimens.

The CHAMPUS policy defines "experimental" as follows:

> Medical care that essentially is investigatory or an unproven procedure or treatment regimen ... that does not meet the generally accepted standards of usual professional medical practice in the community.

Plaintiff, as did the plaintiffs in *Wheeler*, *Hawkins*, and *Gripkey*, has presented CHAMPUS and this Court with the testimony, in affidavit form, of three oncologists who conclude that they are convinced to a reasonable degree of medical certainty that HDC–PSCR is a generally accepted treatment.

Rather than counter the testimony of Plaintiff's experts with other experts, CHAMPUS relies on old studies and argues that nothing has changed the acceptability of HDC–PSCR as a form of treatment. Recently many courts have been forced to wrestle with determinations on whether certain treatments are experimental. The one thing that these courts as well as the medical profession have been able to agree upon is that the status (i.e., whether experimental or generally accepted) of many medical treatments is constantly in a state of flux. *See, e.g., Harris v. Mutual of Omaha Companies*, 992 F.2d 706, 713 n. 4 (7th Cir.1993) (noting that courts had reached different outcomes on the issue of whether HDC-autologous bone marrow transplant is an experimental procedure). Given the perpetual changes in status of treatments, it is not enough for CHAMPUS to counter medical experts' testimony that HDC–PSCR is generally accepted by simply relying on dated studies and arguing that the treatment's status has not changed.

CHAMPUS also argues that Plaintiff's experts are not able to testify to the acceptance of HDC–PSCR outside of their geographic area. The curriculum vitae of Plaintiff's experts indicate that their medical expertise is national and not just regional. Furthermore, the fact that experts in *Wheeler*, *Hawkins*, and *Gripkey* reached the same conclusions seems to indicate that doctors from outside Indiana are also confident of the general acceptance of HDC–PSCR.

Additionally, CHAMPUS has sought to add to its requirements for declassifying a treatment as experimental. It is not enough, argues CHAMPUS, for a treatment to be generally accepted. Now the treatment must also be "safe, effective, and superior to existing therapies." *See* Affidavit of Martha M. Maxey. As noted in *Gripkey*, these criteria "find no basis in statute or the formal regulations of CHAMPUS." *Gripkey*, 1994 WL 276265 *3. To further confuse matters, a study cited by CHAMPUS appears to use these criteria as determinative of a treatment's experimental status. *Id.* Because these criteria are without statutory or regulatory basis, and, in fact, add to the requirements set forth in statutes and regulations, it is arbitrary and capricious for CHAMPUS to deny coverage on the basis of them.

Finally, CHAMPUS looks to bolster its position by arguing to the Court that BC/BS and FEHBP also exclude coverage of HDC–PSCR. However, in the short time since the instant case was filed, FEHBP has an-

nounced an immediate change in coverage for HDC in connection with bone marrow transplants; it is now allowed in the treatment of breast cancer, ovarian cancer, and multiple myeloma. David Brown & Spencer Rich, "Federal Worker Health Program to Add Benefits; Slightly Lower Premiums Accompany Improvements," *The Washington Post*, Sept. 21, 1994, at A1. As other insurance programs must constantly reassess their status of coverage for procedures, so must CHAMPUS.

## B. Preliminary Injunctive Relief

### 1. Burden on Movant

■ The decision whether to grant or deny a request for a preliminary injunction is ordinarily within the discretion of the trial judge. *Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir.1994); *Wisconsin Music Network, Inc. v. Muzak Ltd. Partnership*, 5 F.3d 218, 221 (7th Cir.1993). A preliminary injunction, however, is an extraordinary remedy that should not be granted except when the law, the facts, and the equities clearly appear to be in favor of the moving party. *See Baja Contractors, Inc. v. City of Chicago*, 830 F.2d 667, 674–75 (7th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 388–89 (7th Cir.1984).

■ Although the Seventh Circuit has stated the test in varying ways, to prevail on a motion for a preliminary injunction, the moving party bears the burden of establishing five requirements:

(1) that it has no adequate remedy at law;
(2) that it will suffer irreparable harm if the preliminary injunction is not issued;
(3) that the irreparable harm it will suffer if the preliminary injunction is not granted outweighs the irreparable harm the defendant will suffer if the injunction is granted;
(4) that it has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest.

*Manbourne, Inc. v. Conrad*, 796 F.2d 884, 887 (7th Cir.1986); *accord Storck USA*, 14 F.3d at 313–14; *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 608 (7th Cir.1993); *Wisconsin Music*, 5 F.3d at 221; *United States v. Rural Elec. Convenience Co–Op Co.*, 922 F.2d 429, 432 (7th Cir.1991). These factors are evaluated in accordance with a "sliding scale" approach:

the more the balance of irrevocable harms inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits ... [the plaintiff] need show in order to get the injunction.

*Kowalski v. Chicago Tribune Co.*, 854 F.2d 168, 170 (7th Cir.1988). Balancing the hardships therefore involves a two-step process. First, the court must assess the plaintiff's chance of success; next, it must balance the hardships in accordance with this determination. *Storck USA*, 14 F.3d at 314.

■ A showing of irreparable harm is insufficient if the harm will occur only in the indefinite future: "the moving party must make a 'clear showing of immediate irreparable harm.'" *Campbell Soup Co. v. Conagra, Inc.*, 977 F.2d 86, 91 (3d Cir.1992) (quoting *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989)). In any event, the burden rests on the plaintiff to prove the necessity of the injunction. *Rural Elec.*, 922 F.2d at 432.

### 2. Plaintiff's Showing in the Instant Case

As noted above, Plaintiff's doctors have indicated that without HDC–PSCR, she will likely die. The loss of Plaintiff's life is surely irreparable harm for which there is no adequate remedy at law. CHAMPUS has made no showing that it will suffer irreparable harm if the preliminary injunction issues. Likewise, CHAMPUS has made no showing that the public interest will be harmed, and this Court has no basis for determining that the public interest would be harmed. As indicated in the discussion above, Plaintiff has a high likelihood of prevailing on the merits. Therefore, all of the requirements under the Federal Rules of Civil Procedure and the Seventh Circuit have been met for issuing a preliminary injunction in the instant case.

The impediment to issuing a preliminary injunction in the instant case is Local Rule 65.1 which requires a party moving for a preliminary injunction to file a "verified motion [which] establishes the willingness of the moving party to provide security as the Court might deem proper;" without such a verified motion, this Court may not issue a preliminary injunction. Plaintiff has filed an affidavit stating that neither she nor her husband has adequate assets to provide security for the issuance of a preliminary injunction. Therefore, Plaintiff's motion for preliminary injunction cannot be granted. However, in light of the discussion below, the motion is moot.

### C. Summary Judgment

Because Plaintiff does not have adequate assets to provide security for the issuance of a preliminary injunction, she has requested an emergency trial on her Complaint. However, CHAMPUS, in its memorandum in response to Plaintiff's request for injunctive relief and in support of its own motion for summary judgment, argues that because the instant action constitutes a review of an agency decision, this Court is therefore limited to the contents of the administrative record in rendering a decision.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper where

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judg-

ment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir. 1989); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336.

> The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552. If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf,* 870 F.2d at 1330.

Based on the contents of the administrative record and the reasoning discussed above, summary judgment is entirely inappropriate for CHAMPUS; as a matter of law, CHAMPUS is not entitled to prevail.[3] However, based upon the same analysis, Plaintiff is entitled to prevail. As a matter of law, CHAMPUS' decision was arbitrary and capricious. Since Plaintiff is entitled to prevail on her claims, including her claim for permanent injunctive relief, her claim for a preliminary injunction is now moot.

### III. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is denied. Additionally, summary judgment is entered in favor of Plaintiff. Defendants are hereby enjoined from denying coverage for Plaintiff's high-dose chemotherapy with peripheral stem cell rescue as treatment for her breast cancer. Plaintiff's motion for preliminary injunction is deemed to be moot and denied.

It is so ORDERED.

---

**3.** In Champus' motion for summary judgment it asserts that it is entitled to summary judgment, *inter alia,* because Plaintiff has not exhausted her administrative remedies. However, CHAMPUS submits no arguments or law to support this position. In fact, CHAMPUS instead argues the standard for this Court to review the instant case. Therefore, this Court does not find CHAMPUS' exhaustion of remedies position to be persuasive or compelling.